# EXHIBIT 1

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

A&M GERBER CHIROPRACTIC, LLC,
a/a/o Conor Carruthers, on behalf of itself
and all others similarly situated,

                                            CASE NO.:

        Plaintiff,

                                            CLASS REPRESENTATION

v.

GEICO GENERAL INSURANCE
COMPANY,

        Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff, A&M GERBER CHIROPRACTIC, LLC, a/a/o Conor Carruthers ("Chiropractor" or "Plaintiff"), on behalf of itself and all others similarly situated, for its Class Action Complaint, hereby sues Defendant, GEICO GENERAL INSURANCE COMPANY ("GEICO" or "Defendant"), and alleges as follows:

### NATURE OF THE ACTION

1.     This is a class action for declaratory relief the value of which in the aggregate exceeds $15,000.00 exclusive of all costs and attorney's fees. Plaintiff is not in a position to assert whether the claims in the aggregate exceed $5,000,000.00 and accordingly cannot make such a claim.

2.     Plaintiff is a Florida profit corporation with its principal place of business in Florida.

3.     Defendant is a Delaware corporation with its principal place of business located in the District of Columbia. GEICO provides automobile insurance throughout the State of

Florida, is registered to do business in Florida, and transacts business in Broward County, maintaining an office and representatives there from where it continues to transact insurance business.

4.      The action does not seek the determination of the reasonableness of any individual charge or reimbursement but to interpret one specific portion of a form insurance contract(s) ("Policy" or "Policies") and GEICO general business practice related to its own interpretation of that form contract(s).

**Background Information – Florida Motor Vehicle No-Fault Law**

5.      Under the Florida Motor Vehicle No-Fault Law, automobile operators are required to secure "personal injury protection" ("**PIP**") coverage that provided a minimum of $10,000.00 in combined medical expense and lost wage coverage that was payable to the insured if the insured was involved in an automobile accident and suffered covered losses. *See, e.g.,* § 627.736(1)(a), Fla. Stat. (2015).  In essence, the statute required that a PIP insurer was to pay "eighty percent of all reasonable expenses for medically necessary medical" treatment.

6.      In, 2007, the Florida Legislature adopted a permissive fee schedule which permitted insurance carriers to utilize the Medicare Part B participating provider fee schedule to as a per se determination of the "reasonable" amount for medical services.[1]

7.      GEICO, at all times material has attempted to adopt the fee schedule permitted by Section 627.736(5)(a), Florida Statutes, into its applicable Policy, and has asserted that it provided adequate notice of the election to use the actual fee schedule.[2]

---

[1]  The statute utilizes different Medicare fee schedules for different treatment.  However, for the services material to this action, the Medicare Part B participating provider fee schedule is used.

[2]  The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies, or

8.    The Florida PIP Statute (2014 – present) provides for the payment of claims as follows:

**(5) Charges for treatment of injured persons.--**

(a) A physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may charge the insurer and injured party only a reasonable amount pursuant to this section for the services and supplies rendered, and the insurer providing such coverage may pay for such charges directly to such person or institution lawfully rendering such treatment if the insured receiving such treatment or his or her guardian has countersigned the properly completed invoice, bill, or claim form approved by the office upon which such charges are to be paid for as having actually been rendered, to the best knowledge of the insured or his or her guardian. However, such a charge may not exceed the amount the person or institution customarily charges for like services or supplies. In determining whether a charge for a particular service, treatment, or otherwise is reasonable, consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, reimbursement levels in the community and various federal and state medical fee schedules applicable to motor vehicle and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.

1.  *The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:*

    f.  *For all other medical services, supplies, and care, 200 percent of the allowable amount under:*

---

care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this subparagraph, the term "service year" means the period from March 1 through the end of February of the following year.

(I)    *The participating physicians fee schedule of Medicare Part B,* except as provided in sub-sub-subparagraphs (II) and (III).

9.    Pursuant to Florida law an insurance company cannot provide lesser coverage than as required under the statute, but can provide greater coverage.

10.    In endorsement, FLPIP (01-13) the GEICO Policy elected the use of the fee schedule but also included the following language:

A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted.

An exemplar of this Policy Endorsement is attached hereto as Exhibit A.  The Plaintiff does not have a copy of the entire policy and therefore cannot attach same to the complaint.  It is Plaintiff's understanding and belief that this language appears in the current form Policy and endorsements used by GEICO in the State of Florida.

11.    Notwithstanding this Policy language, GEICO, as a general business practice, pays only 80% of the billed amount when the charge submitted by the provider is less than the fee schedule amount—the amount allowed per the fee schedule.  It is Plaintiff's position that GEICO is required to pay the full billed amount.

## GENERAL FACTS RELATED TO INDIVIDUAL PLAINTIFF

12.    On or about March 18, 2015, Conor Carruthers ("Carruthers") was involved in a motor vehicle accident, and as a result, sustained bodily injuries related to the operation, maintenance, or use of a motor vehicle.

13.    At that time, Carruthers was a contracting party and/or a named insured and/or an omnibus insured under an automobile insurance policy issued by GEICO, and that Policy was in full force and effect, and provided PIP coverage as required by law to comply with Florida's

Motor Vehicle No-Fault Law. Conor Carruthers sought from Plaintiff medically necessary services for injuries related to an automobile accident. In exchange for those services, Patient assigned all benefits under the subject policy to Plaintiff. The purpose of the assignment was to authorize Plaintiff to bill Defendant directly for the medical services provided to Patient, and to require Defendant to pay Plaintiff directly at its home office. In other words, Plaintiff stepped into Patient's shoes and became a party to the insurance contract.

14.     Part of the treatment was for services billed under CPT Code 97110. The Plaintiff charged $60.00 for charges attributed to CPT Code 97110 four (4) times. This charge is less than the amount payable under the elected fee schedule. However, the Defendant only paid $48.00 per treatment for a total of $192.00, instead of the charged amount of $240.00. Treatment was also rendered pursuant to CPT code 97140; likewise the charge for those services was also below the amount payable under the fee schedule, but GEICO only paid at 80% of the fee schedule rather than the billed amount.

15.     For each one of these payments the Defendant submitted an Explanation of Review that contained the code BA for each charge that is below the fee schedule amount. See EORs attached hereto as Exhibit B.

## DEFENDANT'S APPLICATION OF EXPLANATION CODE BA
## HAS BEEN WIDESPREAD

16.     The above-described Policy, including subsequently enacted endorsements that contain substantially similar language, is an insurance contract, based on a standardized form whose versions, coverages, and endorsements and claims payment information are assigned uniform alphanumeric codes.

17.     The Policy terms and PIP statute equally apply to Defendant's insureds and assignees of the Policy, including Plaintiff and Class Members.

18.     Interpretation of the Policy, the PIP statute, and its amendments are not dependent on the factual circumstances applying to Plaintiff and each Class Member. Plaintiff's claim presents a question of law for the Court whose determination and resolution would apply to Plaintiff and all Class Members across the board.

19.     Upon information and belief, Defendant tracks its general business practice as it relates to each member of the Class electronically and maintains electronic records that are searchable. Upon information and belief, Defendant routinely utilized an identical standardized explanation code: BA.

20.     The common injury that Defendant caused Plaintiff and Class Members stems from Defendant's misinterpretation of its form Policy(ies).

**CLASS ACTION ALLEGATIONS**

21.     Plaintiff wishes to be designated as a "Class Representative," and as Class Representative brings this action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure on behalf of all other persons similarly situated—the "Class" or "Class Members" defined as follows:

> Class Definition
>
> All health care providers who submitted claims for no-fault benefits under PIP policies to which Endorsement FLPIP (01-13), and any subsequent policies with substantially similar language that were in effect since January 1, 2013, (the "Class Period"), where GEICO utilized the Code BA with respect to the payment of any claim.

Plaintiff and Class Members reserve the right to amend the Class definition as discovery proceeds and to conform to the evidence. Excluded from the Class are: any Defendant, and any subsidiary or affiliate of that Defendant, and the directors, officers and employees of that Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

22. <u>Numerosity (Rule 1.220(a)(1))</u>. Plaintiffs allege on information and belief that the number of Class Members is so numerous that joinder of them is impractical. Plaintiff's belief is based on information indicating the number of medical providers in Florida, the number of Defendant's insureds in Florida, and that GEICO has had a general business practice of applying explanation code BA to its claims to effect payments.

23. At this time, Plaintiff does not know the exact number of Class Members, but the members of the Class will be easily ascertained through GEICO's records through the use of their own computer data. Indeed, a simple run of the data will uncover all claims information, including claims with explanation code BA, which will provide each Class Member and claim for which GEICO improperly interpreted its Policy(ies). This data will enable the Plaintiff to easily determine common action and liability as well as damages for all putative insured's claims.

24. <u>Commonality (Rule 1.220(a)(2))</u>. There are common questions of law and/or fact that predominate over any questions affecting only individual members of the class. These principal common issues include the following:

     a. What is the proper interpretation of its Policy(ies);

     b. Whether the applicable Policy(ies) require payment of 100% of billed charges for all claims that utilize explanation code BA;

     c. Whether the Plaintiff and the Class are entitled to declaratory relief to determine the parties' respective rights and obligations concerning the provisions of GEICO's policies that contain Endorsement FLPIP (01-13) and any subsequent similarly similar policy language;

     d. Whether the Plaintiff and the Class are entitled to information notice to inform them that the Defendant has not properly paid claims that were paid based on the BA code;

     e. Whether GEICO breached its insurance policy(ies).

25.     Typicality (Rule 1.220(a)(3)). The claims of the Class Representative are typical of the claims that would be asserted by other members of the Class in that, in proving its claims, Plaintiff will simultaneously prove the claims of all Class Members. Plaintiff and each Class Member is a health care provider insured under Defendant's standardized Policy, whose claims pursuant to Defendant's PIP Policy have been underpaid based solely on the Defendant's improper reading of its own insurance policy.

26.     Adequacy (Rule 1.220(a)(4)). The Class Representative is a health care provider doing business in Florida that has no conflicts of interest and will fairly and adequately protect and represent the interests of each member of the Class. Additionally, the Class Representative is fully cognizant of its responsibility as Class Representative and has retained experienced counsel fully capable of, and intent upon, vigorously pursuing the action. Each class counsel has extensive experience in class and/or insurance claims and litigation.

27.     Rule 1.220(b)(2). Under Count I GEICO has acted or refused to act on grounds or in a manner generally applicable to all members of the Class, thereby making declaratory relief to the entire Class particularly appropriate. Defendant systematically and routinely improperly interpreted its Policy(ies), affecting Plaintiff and each Class Member.

28.     Because Plaintiff seeks declaratory relief for Class Members under Rule 1.220(b)(2), the prosecution of separate declaratory actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the Defendant. Further, adjudications with respect to individual Class Members would, as a practical matter, be dispositive of the interests of other Class Members who are not parties to the adjudication and may impair and

impede their ability to protect their interests. Certification is also appropriate because there is no claim for monetary relief.

29. Rule 1.220 (b)(3). In the alternative to a (b)(2) certification, there are several predominant common questions stated above. Under Count I questions of law or fact common to the Class Representative's claim and the claim of each member of the class as described above predominate over any questions of law or fact affecting only individual members of the class. Moreover, class representation is clearly superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I
## DECLARATORY JUDGMENT
## (CLASS CLAIM)

30. Plaintiff and the Class repeat and re-allege each and every allegation contained in Paragraphs 1 through 29, above, as if the same were fully alleged therein.

31. All conditions precedent to this action have occurred, been satisfied or been waived.

32. Plaintiff and all putative Class Members have submitted claims for PIP benefits to the Defendant for payment under Defendant's standardized insurance Policy.

33. The Policy contains language that not only elects the use of the fee schedules permitted in Florida PIP Law, but also contains language relating to the payment of claims when the amount charged is less than the fee schedule amount.

34. Each charge that is below the fee schedule amount is reviewed by the Defendant and given the BA code on each of its Explanation of Reviews.

35. It is Plaintiff's position that the Policy language requires the Defendant to pay the full charged amount when the amount charged is less than the applicable fee schedule amount.

36.     The Defendant has disputed this interpretation and has instead asserted that it is only required to pay 80% of the billed amount and has indeed only made that payment.

37.     Accordingly, Plaintiff, individually and on behalf of all those similarly situated, is in doubt as to its rights under the Policy and requests this Court declare its rights and obligations under the Policy.

38.     There is a bona fide, actual, present, practical need for the Court to declare the proper interpretation of the Policy.

39.     Plaintiff has interests adverse to Defendant and the declaration requested deals with a present ascertainable state of facts as presented in the allegations set forth above.

40.     There is also an actual controversy between GEICO, Plaintiff and all Class Members concerning the construction and interpretation of the Policy assigned to Plaintiff and Class Members.  Specifically, there is legitimate dispute over, inter alia, during the Class Period: whether GEICO improperly interpreted its policy and reduced the payment amounts on charges below the fee schedule, and only paid 80% of the charge.

**WHEREFORE**, Class Representative, individually and on behalf of the Class of persons similarly situated, and pursuant to Chapter 86, Florida Statutes, hereby requests a declaratory judgment interpreting Florida Statute 627.736 and the insurance Policy issued by GEICO described herein, and prays for an Order as follows:

a.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Florida Rule of Civil Procedure 1.220(b)(2);

b.     Designating Plaintiff as representative of the Class and its counsel as Class counsel;

c.     Entering judgment in favor of Plaintiff and the Class and against Defendant;

d.       Awarding attorney fees and costs under Section 627.428, Florida Statutes, for prosecuting this action;

e.       Entering judgment as follows:

1)       Declaring Defendant's Policy requires payment of 100% of the billed charges for all charges submitted under the Policy that are below the fee schedule amount;

2)       Entry of an order requiring Defendant provide notice to all Class Members regarding the rulings, findings, declarations in this matter and their legal rights with respect to GEICO's improper interpretation of the Policy;

3)       Declaring that Defendant's conduct constitutes a breach of the insurance Policy; and,

4)       Granting such further relief as the Court deems just and equitable, including but not limited to, awarding the attorneys' fees and costs pursuant to Section 627.428, Florida Statutes, incurred in the prosecution of this action.

## **JURY DEMAND**

Plaintiff requests trial by jury on all issues so triable.

Dated:  September 9, 2016.                          Respectfully submitted,

                                                By: *s/Edward H. Zebersky*
                                                Edward H. Zebersky, Esq.
                                                Fla. Bar No. 0908370
                                                Michael T. Lewenz, Esq.
                                                Fla. Bar No. 111604
                                                ZEBERSKY PAYNE, LLP
                                                110 S.E. 6th Street, Ste. 2150
                                                Fort Lauderdale, FL  33301
                                                Telephone:  (954) 989-6333
                                                Facsimile:  (954) 989-7781
                                                *ezebersky@zpllp.com*
                                                *mlewenz@zpllp.com*

and

Steven R. Jaffe, Esq.
Fla. Bar No. 390770
Mark. S. Fistos, Esq.
Fla. Bar No. 909191
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Facsimile: (954) 524-2822
*steve@pathtojustice.com*
*mark@pathtojustice.com*

***Attorneys for Plaintiffs***

Exhibit A

# GEICO

**FLORIDA POLICY AMENDMENT**

Policy Number:

*Your* policy is amended as follows:

**SECTION II - Personal Injury Protection Coverage** is replaced in its entirety with the following:
**PART I - PERSONAL INJURY PROTECTION**
**DEFINITIONS**

1. *Bodily injury* means bodily injury, sickness, or disease to a person, caused by accident, including resulting sickness, disease or death resulting therefrom. All claims for damages arising from *bodily injury* to a person from a single loss shall be considered one *bodily injury* .

2. *Disability benefits* means sixty percent (60%) of any loss of gross income and loss of earning capacity per individual from inability to work proximately caused by the injury sustained by the injured person, plus all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the injured person would have performed without income for the benefit of his or her household.

3. *Emergency medical condition* means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:
   (a) Serious jeopardy to patient health;
   (b) Serious impairment to bodily functions; or
   (c) Serious dysfunction of any bodily organ or part.

4. *Entity wholly owned* means a proprietorship, group practice, partnership, or corporation that provides health care services rendered by licensed health care practitioners and in which licensed health care practitioners are the business owners of all aspects of the business entity, including, but not limited to, being reflected as the business owners on the title or lease of the physical facility, filing taxes as the business owners, being account holders on the entity's bank account, being listed as the principals on all incorporation documents required by this state, and having ultimate authority over all personnel and compensation decisions relating to the entity. However, this definition does not apply to an entity that is wholly owned, directly or indirectly, by a hospital licensed under Florida Statutes, chapter 395.

5. *Insured* means:
   (a) *You* or any *relative* while *occupying* a *motor vehicle* or, while a *pedestrian* through being struck by a *motor vehicle*; or
   (b) Any other person while *occupying* the *insured-motor-vehicle* or, while a *pedestrian*, through being struck by the *insured-motor-vehicle*.

6. *Insured-motor-vehicle* means a *motor vehicle*:
   (a) Of which *you* are the *owner*; and
   (b) With respect to which security is required to be maintained under the Florida Motor Vehicle No-Fault Law, and
   (c) For which a premium is charged by us, or which is a trailer, other than a mobile home, designed for use with a *motor vehicle*.

7. *Medical benefits* means all reasonable expenses for *medically necessary* medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices and *medically necessary* ambulance, hospital, and nursing services if the individual receives initial services and care pursuant to paragraph (a) within 14 days after the motor vehicle accident. The *medical benefits* provide reimbursement only:
   (a) For initial services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under Florida Statutes, chapter 458 or chapter 459, a dentist licensed under Florida Statutes, chapter 466, or a chiropractic physician licensed under Florida Statutes, chapter 460 or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under part III of Florida Statutes, chapter 401 which provides emergency transportation and treatment.
   (b) Upon referral by a provider described in paragraph (a), for follow up services and care consistent with the underlying medical diagnosis rendered pursuant to paragraph (a) which may be provided, supervised, ordered, or prescribed only by a physician licensed under Florida Statutes, chapter 458 or chapter 459, a chiropractic physician licensed under Florida Statutes, chapter 460, a dentist licensed under Florida Statutes, chapter 466, or, to the extent permitted by applicable law and under the supervision of such physician, osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under Florida Statutes, chapter 458 or chapter 459 or an advanced registered nurse practitioner licensed under Florida Statutes, chapter 464.

FLPIP (01-13)   Page 1 of 11

# Exhibit A

(c) Follow up services and care may also be provided by any of the following persons or entities:
1. A hospital or ambulatory surgical center licensed under Florida Statutes, chapter 395.
2. An *entity wholly owned* by one or more physicians licensed under Florida Statutes, chapter 458 or chapter 459, chiropractic physicians licensed under Florida Statutes, chapter 460, or dentists licensed under Florida Statutes, chapter 466 or by such practitioners and the spouse, parent, child, or sibling of such practitioners.
3. An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals.
4. A physical therapist licensed under Florida Statutes, under chapter 486, based upon a referral by a provider described in paragraph (b) under *medical benefits*.
5. A health care clinic licensed under Florida Statutes, part X of chapter 400 which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or
   (a) Has a medical director licensed under Florida Statutes, chapter 458, chapter 459, or chapter 460;
   (b) Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and
   (c) Provides at least four of the following medical specialties:
      (i) General medicine.
      (ii) Radiography.
      (iii) Orthopedic medicine.
      (iv) Physical medicine.
      (v) Physical therapy.
      (vi) Physical rehabilitation.
      (vii) Prescribing or dispensing outpatient prescription medication.
      (viii)Laboratory services.
*Medical benefits* do not include massage as defined in Florida Statutes § 480.033 or acupuncture as defined in Florida Statutes § 457.102, regardless of the person, entity, or licensee providing massage or acupuncture, and a licensed massage therapist or licensed acupuncturist will not be reimbursed for *medical benefits*.

8. *Medically necessary* refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:
   (a) In accordance with generally accepted standards of medical practice;
   (b) Clinically appropriate in terms of type, frequency, extent, site, and duration; and
   (c) Not primarily for the convenience of the patient, physician, or other health care provider.
9. *Motor vehicle* means any self-propelled vehicle of four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semi-trailer designed for use with such vehicle.
A *motor vehicle* does not include:
   (a) Any *motor vehicle* which is used in mass transit other than public school transportation and designed to transport more than five passengers exclusive of the operator of the *motor vehicle* and which is owned by a municipality, a transit authority, or a political subdivision of the state; or
   (b) A mobile home.
10. *Occupying* means in or upon or entering into or alighting from.
11. *Owner* means a person or organization who holds the legal title to a *motor vehicle*, and also includes:
   (a) A debtor having the right to possession, in the event a *motor vehicle* is the subject of a security agreement, and
   (b) A lessee having the right to possession, in the event a *motor vehicle* is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more, and
   (c) A lessee having the right to possession, in the event a *motor vehicle* is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance.
12. *Pedestrian* means a person while not an occupant of any self-propelled vehicle.
13. *Relative* means a person related to *you* by blood, marriage or adoption (including a ward or foster child) who is usually a resident of the same household as *you*.
14. *You* and *your* means the named insured shown in the declarations or his or her spouse if a resident of the same household.

**PAYMENTS WE WILL MAKE**

The Company will pay in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), and where applicable in accordance with all fee schedules contained in the Florida Motor Vehicle No Fault Law, to or for the benefit of the injured person:

(A) Eighty percent (80%) of *medical benefits* which are *medically necessary*, pursuant to the following schedule of maximum charges contained in the Florida Statutes § 627.736(5) (a)1., (a)2. and (a)3.:

1. For emergency transport and treatment by providers licensed under Florida Statutes, chapter 401, 200 percent of Medicare.

2. For emergency services and care provided by a hospital licensed under Florida Statutes, chapter 395, 75 percent of the hospital's usual and customary charges.

3. For emergency services and care as defined by Florida Statutes, § 395.002 provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

6. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

   (I.) The participating physicians fee schedule of Medicare Part B, except as provided in sections (II.) and (III.)

   (II.) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

   (III.) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B (as provided in section (A) 6. above), we will limit reimbursement to eighty percent (80%) of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes, § 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

We may use the Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies, or care if the coding policy or payment methodology does not constitute a utilization limit. A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted.

Within 30 days after receiving notice that the Medicaid program has paid *medical benefits*, we shall repay the full amount of the *medical benefits* to the Medicaid program subject to the LIMIT OF LIABILITY .

(B) *Disability benefits*, and

(C) Death benefits.

The above benefits will be provided for injuries incurred by an *insured* as a result of *bodily injury* caused by an accident arising out of the ownership, maintenance or use of a *motor vehicle*.

**EXCLUSIONS**

Section II - Part I does not apply:

1. To *you* or any *relative* injured while *occupying* any *motor vehicle* owned by *you* and which is not an *insured-motor-vehicle* under this insurance;

2. To any person while operating the *insured-motor-vehicle* without *your* express or implied consent;

3. To any person, if such person's conduct contributed to his *bodily injury* under any of the following circumstances:

   (i) Causing *bodily injury* to himself intentionally;

(ii) While committing a felony;

4.  To *you* or any dependent *relative* for any loss of gross income and loss of earning capacity from inability to work proximately caused by the injury sustained by the injured person if an entry in the schedule or declarations indicates such coverage does not apply;

5.  To any *pedestrian*, other than *you* or any *relative*, not a legal resident of the State of Florida;

6.  To any person, other than *you*, if such person is the *owner* of a *motor vehicle* with respect to which security is required under the Florida Motor Vehicle No-Fault law, as amended;

7.  To any person, other than *you* or any *relative*, who is entitled to personal injury benefits from the *owner* or *owners* of a *motor vehicle* which is not an *insured-motor-vehicle* under this insurance or from the *owner's* insurer; or

8.  To any person who sustains *bodily injury* while *occupying* a *motor vehicle* located for use as a residence or premises.

## LIMIT OF LIABILITY

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law (as enacted, amended or newly enacted), from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains *bodily injury* as the result of any one accident shall be:

1.  After the applicable deductible is met and subject to the **PAYMENTS WE WILL MAKE**, a combined total of $10,000 for *medical benefits* and *disability benefits*.
    *Medical benefits* are subject to the following limitations:
    (a) Reimbursement for services and care provided in paragraphs (a), (b) or (c) of the definition of *medical benefits* up to $10,000 if a physician licensed under Florida Statutes, chapter 458 or chapter 459, a dentist licensed under Florida Statutes, chapter 466, a physician assistant licensed under chapter 458 Florida Statutes, chapter 458 or chapter 459, or an advanced registered nurse practitioner licensed under Florida Statutes, chapter 464 has determined that the injured person had an *emergency medical condition*.
    (b) Reimbursement for services and care provided in paragraphs (a), (b) or (c) of the definition of *medical benefits* is limited to $2,500 if any provider listed in paragraphs (a), (b) or (c) of the definition of *medical benefits* determines that the injured person did not have an *emergency medical condition*.

2.  $5,000 for death benefits.

## APPLICATION OF DEDUCTIBLE

Pursuant to Florida Statutes § 627.739, the amount of any deductible stated in the declarations and applicable to each *insured* must be applied to 100% of all expenses or losses as described in Florida Statutes § 627.736 with respect to all *medical benefits* and *disability benefits* incurred by or on behalf of each person to whom the deductible applies and who sustains *bodily injury* as the result of any one accident. Such deductible will not apply to the death benefit.

## OTHER INSURANCE

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workers' compensation laws of any state or the federal government. If benefits have been received under the Florida Motor Vehicle No-Fault Law, as amended, from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

## POLICY PERIOD - TERRITORY

The insurance under this Section applies only to accidents which occur during the policy period:
(a) In the State of Florida;
(b) As respects *you* or a *relative*, while *occupying* the *insured-motor-vehicle* outside the State of Florida but within the United States of America, its territories or possessions or Canada; and
(c) As respects *pedestrians* injured when struck by the *insured-motor-vehicle* in the State of Florida, if they are not the *owner* of a *motor vehicle* for which coverage is required to be maintained under the Florida No-Fault Law.

## CONDITIONS

1. NOTICE

In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for *bodily*

*injury* against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

2. **ACTION AGAINST THE COMPANY**

As a condition precedent to filing any action for benefits under this coverage, written notice of intent to initiate litigation must be provided to us pursuant to Florida Statutes § 627.736 (10). Such notice may not be sent until the claim is overdue, including any additional time that we have to pay the claim pursuant to Florida Statutes § 627.736 (4)(b). The notice must state that it is a "demand letter under s. 627.736" and state with specificity:

1. The name of the *insured* upon which such benefits are being sought, including a copy of the assignment giving rights to bring the action if the claimant is not the *insured*.
2. The claim number or policy number upon which such claim was originally submitted to us.
3. To the extent applicable, the name of any medical provider who rendered to an *insured* the treatment, services, accommodations, or supplies that form the basis of such claim; and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A completed form satisfying the requirements of Florida Statutes § 627.736 (5) (d) or the lost-wage statement previously submitted may be used as the itemized statement. To the extent that the demand involves our withdrawal of payment under Florida Statutes § 627.736 (7)(a) for future treatment not yet rendered, the claimant shall attach a copy of our notice withdrawing such payment and an itemized statement of the type, frequency, and duration of future treatment claimed to be reasonable and *medically necessary*.

Each required notice must be delivered to us by United States certified or registered mail, return receipt requested. Such postal costs shall be reimbursed by us if requested by the claimant in the notice, when we pay the claim. Such notice must be sent to the person and address specified by us for the purposes of receiving notices under Florida Statutes § 627.736 (10) (c).

If, within 30 days after receipt of notice by us, the overdue claim specified in the notice is paid by us together with applicable interest and a penalty of 10 percent of the overdue amount paid by us, subject to a maximum penalty of $250, no action may be brought against us. If the demand involves our withdrawal of payment under Florida Statutes § 627.736 (7)(a) for future treatment not yet rendered, no action may be brought against us if, within 30 days after its receipt of the notice, we mail to the person filing the notice a written statement of the our agreement to pay for such treatment in accordance with the notice and to pay a penalty of 10 percent, subject to a maximum penalty of $250, when it pays for such future treatment in accordance with the requirements of Florida Statutes § 627.736 (10).

To the extent we determine not to pay any amount demanded, the penalty is not payable in any subsequent action. Payment or our agreement shall be treated as being made on the date a draft or other valid instrument that is equivalent to payment, or our written statement of agreement, is placed in the United States mail in a properly addressed, postpaid envelope, or if not so posted, on the date of delivery. We are not obligated to pay any attorney fees if we pay the claim or mail our agreement to pay for future treatment within the time prescribed by section Florida Statutes § 627.736 (10).

The applicable statute of limitation for an action under Florida Statutes § 627.736 shall be tolled for 30 business days by the mailing of the notice required by this Florida Statutes § 627.736 (10).

3. **PROOF OF CLAIM AND MEDICAL REPORTS**

As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable.

4. **INDEPENDENT MEDICAL EXAMINATIONS**

Any person making a claim shall submit to mental or physical examinations in accordance with the Florida Motor Vehicle No-Fault Law (as enacted, amended, or newly enacted), at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If a person unreasonably refuses to submit to or fails to appear at an examination, we are no longer liable for subsequent personal injury protection benefits. An *insured's* refusal to submit to or failure to appear at two examinations raises a rebuttable presumption that the *insured's* refusal or failure was unreasonable.

5. **PAYMENT OF CLAIM WITHHELD**

Whenever a person making a claim is charged with committing a felony, if such person's conduct contributed to their *bodily injury*, we may withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

6. **EXAMINATION UNDER OATH (EUO)**

If requested by us, an *insured* or omnibus insured must submit to an examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information. This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO.

Compliance with submitting to an EUO is a condition precedent to receiving benefits. If an *insured* or omnibus insured refuses to submit to or fails to appear at an EUO, we will not be liable for personal injury protection benefits.

7. **REIMBURSEMENT AND SUBROGATION**

In the event of payment to or for the benefits of any injured person under this insurance:

(a) The Company may be subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

(b) The Company providing personal injury protection benefits on a private passenger motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the *owner* or insurer of the *owner* of a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, if such injured person sustained the injury while *occupying*, or while a *pedestrian* through being struck by, such commercial motor vehicle. This does not apply to owners or registrants identified as taxi-cabs as defined in Florida Statutes §627.730(1)(b).

8. **SPECIAL PROVISION FOR RENTED OR LEASED VEHICLES**

Notwithstanding any provision of this coverage to the contrary, if a person is injured while *occupying*, or through being struck by, a *motor vehicle* rented or leased under a rental or lease agreement, within the state of Florida, which does not specify otherwise in at least 10 point type on the face of such agreement, the personal injury protection coverage afforded under the lessor's policy shall be primary. Personal injury protection coverage offered under this policy will not apply to a vehicle rented, operated, used, or leased outside the state of Florida.

9. **REASONABLE BELIEF OF FRAUD**

If we have a reasonable belief that a fraudulent insurance act, for the purposes of Florida Statutes § 626.989 or Florida Statutes § 817.234, has been committed, we shall notify the injured person, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud. Beginning at the end of the initial 30-day period, we have an additional 60 days to conduct our fraud investigation. No later than 90 days after the submission of the claim, we must deny the claim or pay the claim with simple interest. Interest shall be assessed from the day the claim was submitted until the day the claim is paid. All claims denied for suspected fraudulent insurance acts shall be reported to the Division of Insurance Fraud.

10. **NONREIMBURSIBLE CLAIMS**

Claims generated as a result of activities that are unlawful pursuant to Florida Statutes § 817.505 are not reimbursable under the Florida Motor Vehicle No-Fault Law and this policy.

11. **ADDITIONAL CONDITIONS**

If we pay only a portion of a claim or reject a claim due to an alleged error in the claim, we, at the time of the partial payment or rejection, shall provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the person making the claim, at the person's option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which shall be considered a timely submission of written notice of a claim.

We shall create and maintain for each *insured* a log of personal injury protection benefits paid by us on behalf of the *insured*. If litigation is commenced, we shall provide to the *insured* a copy of the log within 30 days after receiving a request for the log from the *insured*.

In a dispute between us and the *insured*, or between an assignee of the *insured's* rights and us, upon request, we must notify the *insured* or the assignee that the policy limits under this section have been reached within 15 days after the limits have been reached.

## PART II – ADDITIONAL PERSONAL INJURY PROTECTION

Additional Personal Injury Protection applies only if a premium amount is shown in the Policy Declarations for "Additional Personal Injury Protection" coverage. It is an optional coverage to compliment Personal Injury Protection Coverage and does not increase the limit of liability.

The terms and conditions under SECTION II: PART I – PERSONAL INJURY PROTECTION apply to this coverage for ADDITIONAL PERSONAL INJURY PROTECTION.

However, the following revisions are made to SECTION II: PART I - PERSONAL INJURY PROTECTION :

The definition of *disability benefits* in SECTION II: PART I – PERSONAL INJURY PROTECTION is replaced in its entirety as follows:

2. *Disability benefits* means eighty-five percent (85%) of any loss of gross income and loss of earning capacity per individual from inability to work proximately caused by the injury sustained by the injured person, plus all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the injured person would have performed without income for the benefit of his or her household.

The PAYMENTS WE WILL MAKE Section in SECTION II: PART I – PERSONAL INJURY PROTECTION is replaced in its entirety with the following:

### PAYMENTS WE WILL MAKE

The Company will pay in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), and where applicable in accordance with all fee schedules contained in the Florida Motor Vehicle No Fault Law, to or for the benefit of the injured person:

(A) One hundred percent (100%) of *medical benefits* which are *medically necessary*, pursuant to the following schedule of maximum charges contained in the Florida Statutes § 627.736(5) (a)1., (a)2. and (a)3.:

    1.  For emergency transport and treatment by providers licensed under Florida Statutes, chapter 401, 200 percent of Medicare.

    2.  For emergency services and care provided by a hospital licensed under Florida Statutes, chapter 395, 75 percent of the hospital's usual and customary charges.

    3.  For emergency services and care as defined by Florida Statutes, § 395.002 provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

    4.  For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

    5.  For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

    6.  For all other medical services, supplies, and care, 200 percent of the allowable amount under:

        (I.)  The participating physicians fee schedule of Medicare Part B, except as provided in sections (II.) and (III.)

        (II.)  Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

        (III.)The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B (as provided in section (A) 6, above), we will limit reimbursement to eighty percent (80%) of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes, § 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

We may use the Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies, or care.

A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted.

Within 30 days after receiving notice that the Medicaid program has paid *medical benefits*, we shall repay the full amount of the *medical benefits* to the Medicaid program subject to the **LIMIT OF LIABILITY**.

(B) *Disability benefits*, and

(C) Death benefits.

The above benefits will be provided for injuries incurred by an *insured* as a result of *bodily injury* caused by an accident arising out of the ownership, maintenance or use of a *motor vehicle*.

The following paragraph is added to the LIMIT OF LIABILITY in SECTION II: PART I – PERSONAL INJURY PROTECTION Section:

We will not pay any benefits for *bodily injury* which the *insured* or anyone else is required to pay because of any elected basic Personal Injury Protection deductible or other payment limitation, or the portion of any loss the *insured* must share under any provision of any basic Florida Personal Injury Protection Coverage.

## PART III - MODIFICATION OF POLICY COVERAGES

Any Automobile Medical Payments insurance, any Uninsured Motorists coverage or any excess Underinsured Motorists coverage afforded by the policy shall be excess over any Personal Injury Protection benefits paid or available for payment or which would be available but for the application of a deductible.

Regardless of whether the full amount of Personal Injury Protection benefits have been exhausted, any Medical Payments insurance afforded by this policy shall pay the portion of any claim for Personal Injury Protection  *medical benefits* contained in Part I which are otherwise covered but not available for payment due to the limitation of eighty percent (80%) of *medical benefits* contained in Part I but shall not be payable for the amount of the deductible selected.

## PART IV - PROVISIONAL PREMIUM

It is agreed that in the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law (as enacted, amended or newly enacted), providing for the exemption of persons from tort liability, the premium stated in the declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the named insured pursuant to the Florida Motor Vehicle No-Fault Law, as amended, with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated in the declarations, the insured shall pay to the Company the excess as well as the amount of any return premium previously credited or refunded.

## PART V - AUTOMOBILE MEDICAL PAYMENTS COVERAGE
(Automobile Medical Payments coverage applies only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage)

The DEFINITIONS under SECTION II - PART I also apply to SECTION II - PART V.
PAYMENTS WE WILL MAKE

Under Automobile Medical Payments coverage, the Company will pay all reasonable  *medically necessary medical benefits* incurred within one year of from the date of the accident for  *bodily injury* caused by an accident arising out of the ownership, maintenance or use of a *motor vehicle* and sustained by *you* or any *relative* while *occupying* a *motor vehicle* or while a *pedestrian* through being struck by a *motor vehicle.*

We will pay, subject to the coverage limit shown in the policy declarations:

(a) The portion of any claim for Personal Injury Protection  *medical benefits* otherwise covered but not payable due to the coinsurance provision of Personal Injury Protection. This is the twenty percent (20%) of  *medical benefits* not covered in SECTION II - PART I - PAYMENTS WE WILL MAKE , and

(b) *Medically necessary medical benefits* that exceed the Personal Injury Protection *medical benefits* coverage paid.

Payments we will make pursuant to paragraph (b) will be paid pursuant to the following schedule of maximum charges:

1.  For emergency transport and treatment by providers licensed under Florida Statutes, chapter 401, 200 percent of Medicare.

2.  For emergency services and care provided by a hospital licensed under Florida Statutes, chapter 395, 75 percent of the hospital's usual and customary charges.

3.  For emergency services and care as defined by Florida Statutes, § 395.002 provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.

4.  For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

5.  For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

6.  For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I.) The participating physicians fee schedule of Medicare Part B, except as provided in sections (II.) and (III.)

(II.) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories,

(III.)The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B (as provided in section (A) 6. above), we will limit reimbursement to eighty percent (80%) of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes, § 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.

The applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

We may use the Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies, or care.

A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted.

## EXCLUSIONS

Automobile Medical Payments coverage does not apply:

1. To *you* or any *relative* injured while *occupying* any *motor vehicle* owned by *you* or a *relative* and which is not an *insured-motor-vehicle* under this insurance;
2. To any person while operating the *insured-motor-vehicle* without *your* express or implied consent;
3. To any person, if such person's conduct contributed to his *bodily injury* under any of the following circumstances:
    (i)  Causing *bodily injury* to himself intentionally;
    (ii) While committing a felony;
4. To any *pedestrian*, other than *you* or any *relative*;
5. To any person, other than *you*, if such person is the *owner* of a *motor vehicle* with respect to which security is required under the Florida Motor Vehicle No-Fault Law, as amended;
6. To any person who sustains *bodily injury* while *occupying a motor vehicle* located for use as a residence or premises;
7. To *bodily injury* sustained by *you* or a *relative* that results from war of any kind;
8. To *bodily injury* sustained by *you* or a *relative* that results from exposure to fungi;
9. To *bodily injury* sustained by *you* or a *relative* that results from:
    (i)   Nuclear reaction;
    (ii)  Radiation or radioactive contamination from any source;
    (iii) The intentional or accidental detonation of, or release of radiation from any nuclear or radioactive device;
10. To *bodily injury* sustained by *you* or a *relative* while *occupying a motor vehicle*, or while a *pedestrian* through being struck by a *motor vehicle* while being employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles.
11. To *bodily injury* sustained by *you* or a *relative* caused by an auto driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

## LIMITS OF LIABILITY

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of Automobile Medical Payments benefits available from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains *bodily injury* as the result of any one accident is the amount listed in the declarations page.

## OTHER INSURANCE

Any amount available for payment under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workers' compensation or other similar laws of any state or the federal government.

If benefits have been received under any similar coverage from any insurer for the same items of loss and expense for which benefits are available under this policy, we shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim. This coverage will coordinate with any applicable Personal Injury Protection benefits but will not duplicate any benefits available for payment. The coverage of the occupied vehicle is primary.

Any Uninsured Motorist Coverage or any excess Underinsured Motorist Coverage afforded by this policy shall be excess over any Automobile Medical Payments benefits paid or available for payment or which would be available but for the application of a deductible; and subject to the terms and conditions of the Uninsured/Underinsured Motorist coverage. This coverage is excess over any other valid and collectible insurance provided with respect to the occupied *motor vehicle*.

**POLICY PERIOD - TERRITORY**

The insurance under this Part applies only to accidents which occur during the policy period:

(a) In the State of Florida; and

(b) We will cover *you* or any *relative* for injuries incurred while *occupying a motor vehicle* or as a *pedestrian* in an accident that occurs outside the state of Florida, but within the United States of America, its territories or possessions, or Canada.

**CONDITIONS**

1.  **NOTICE**

    In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for *bodily injury* against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

2.  **PROOF OF CLAIM**

    As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the *bodily injury* and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable.

3.  **INDEPENDENT MEDICAL EXAMINATIONS**

    Any person making a claim shall submit to mental or physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If a person unreasonably refuses to submit to or fails to appear at an examination, we are no longer liable for subsequent Automobile Medical Payment benefits. An *insured's* refusal to submit to, complete or failure to appear at two examinations will be considered unreasonable.

4.  **PAYMENT OF CLAIM WITHHELD**

    Whenever a person making a claim is charged with committing a felony, if such person's conduct contributed to their *bodily injury*, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted. We also have the right to determine if incurred charges and treatment are reasonable, *medically necessary* and causally related to a *bodily injury* sustained in an accident. This determination may be made by use of utilization review, peer reviews, medical bill reviews or medical examination.

5.  **EXAMINATION UNDER OATH (EUO)**

    If requested by us, *you* or a *relative* must submit to an examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information. This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO. Compliance with submitting to an EUO is condition precedent to receiving benefits. If *you* or a *relative* refuses to submit to or fails to appear at an EUO, we will not be liable for Automobile Medical Payments coverage.

6.  **ACTION AGAINST THE COMPANY**

    No action shall lie against us:

    (a) Unless the *insured* has fully complied with all the policy's terms and conditions; and

    (b) Until 30 days after the required notice of accident and reasonable proof of claim has been filed with us; and

    (c) Unless we receive written notice of the intent to initiate litigation and within 30 days after receipt of such notice we do not:

        (i) Pay the claim; or

        (ii) Mail to the person filing the notice a written statement of our agreement to pay for such treatment in accordance with the notice.

    Payment or our written statement of agreement to pay for treatment shall be treated as being made on the date a draft, or other valid instrument that is equivalent payment, or the written statement of agreement to pay, is placed in the United States mail properly addressed posted envelope or if not so posted, on the date of delivery.

    The written notice of intent to initiate litigation must state that it is a demand letter for Automobile Medical Payments coverage and contain the following information:

(a) The name of the *insured* for whom benefits are being sought including a copy of the assignment giving rights to the claimant if the claimant is not the *insured*;

(b) The claim number and or policy number upon which the claim was originally submitted; and

(c) To the extent applicable, the name of the medical provider who rendered the treatment, services, accommodations or supplies that form the basis of the claim, and each exact amount, the date of treatment, service or accommodation and the type of benefits claimed to be due. A health insurance claim form (CMS-1500) or UB 92 form or any other standard form approved by the Department of Financial Services, may be used as the itemized statement.

The written notice must be delivered to us by United States Certified or Registered mail, Return Receipt Requested, at the address we have filed with and that is made available by the office of the Florida Chief Financial Officer on its internet website.

We will not be liable for interest, attorneys' fees, costs, or any additional penalty.

**7.   SUBROGATION**

In the event of payment to or for the benefits of any injured person under this insurance the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

When an injured person has been paid by us and also recovers from another, the amount recovered will be held by the injured person in trust for us and reimbursed to us to the extent of our payment. If we are not reimbursed, we may pursue recovery of that amount directly against the injured person.

**SECTION V – GENERAL CONDITIONS**

The following conditions are revised:

**15. FRAUD AND MISREPRESENTATION**

Coverage is not provided to any person who conceals or misrepresents any material fact or circumstance relating to this insurance:

1. At the time application is made; or

2. At any time during the policy period; or

3. In connection with the presentation or settlement of a claim.

**16. EXAMINATION UNDER OATH (EUO)**

Unless otherwise modified elsewhere in the policy, if requested by us, an *insured* or omnibus insured must submit to an examination under oath (EUO) by any person named by us when, where and as often as we may reasonably require. This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request is made before, during or after the EUO. Compliance with submitting to an EUO is a condition precedent to receiving benefits or coverage under this policy. If an *insured* or omnibus insured refuses to submit to or fails to appear at an EUO, we will not be liable for benefits or coverage under this policy.

We affirm this amendment.

W.C. E. Robinson
Secretary

O.M. Nicely
President

Exhibit B

# GEICO.
geico.com

## EXPLANATION OF REVIEW

EOR #: GF1431139

Florida

| | | | |
|---|---|---|---|
| Receive Date | : 04/27/2015 | Claim Number | : 0131371320101048 |
| Service Provider | : A M GERBER CHIROPRACTIC LLC | Date Of Loss | : 03/18/2015 |
| | | Patient | |
| | 700 us hwy one STE b | | |
| | North Palm Beach, FL 33408 | | |
| Case Number | : | | |
| Billing Provider | : A M GERBER CHIROPRACTIC LLC | Patient Account # : | |
| | | Adjuster Name | : Daphne Manning |
| 20-2909199 | 700 us hwy one STE b | | |
| | North Palm Beach, FL 33408 | Carrier | : GEICO |
| | | | PO Box 9091 |
| Dates Of Service | : 04/20/2015 - 04/20/2015 | | Macon, GA 31208-9091 |
| Diagnostic Codes | Description | | |

| LINE | DOS | PROC CODE | MOD | DESCRIPTION | UNITS | CHARGE | REDUCTION | *PEN REDUCTION | PROVIDER REIMBURSE | EXPLANATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 04/20/15 | 98941 | AT | Chiropractic manipulative tx spinal 3-4 regions | 1.0 | $85.00 | $0.84 | $0.00 | $84.16 | 721 |
| 2 | 04/20/15 | 97010 | | Application modality 1/> areas hot/cold packs | 1.0 | $40.00 | $27.12 | $0.00 | $12.88 | 721 |
| 3 | 04/20/15 | 97012 | | Appl modality 1/> areas traction mechanical | 1.0 | $50.00 | $16.90 | $0.00 | $33.10 | 721 |
| 4 | 04/20/15 | 97014 | | Appl modality 1/> areas elec stimj unattended | 1.0 | $48.00 | $14.76 | $0.00 | $33.24 | 721 |
| 5 | 04/20/15 | 97110 | 52 | Therapeutic px 1/> areas each 15 min exercises | 1.0 | $60.00 | $0.00 | $0.00 | $60.00 | BA |
| Total Lines : | 5 | | | | | $283.00 | $59.62 | $0.00 | $223.38 | |

Track your medical claims submitted to GEICO by enrolling in our online Medical Provider Claim Tracking website at: https://partners.geico.com/mpctweb.

For questions regarding payment and this EOR, please call your GEICO adjuster Daphne Manning at 863-619-4518 x4518.

| Claim Number | : 0131371320101048 | | Total Charges | : $28?.?0 | EOR # GF1431139 |

**Billing Provider** : A M GERBER CHIROPRACTIC LLC

**Service Provider** : A M GERBER CHIROPRACTIC LLC

**Patient Name** :                                              **Dates of Service** : 04/20/2015 - 04/20/2015

| | | |
|---|---|---|
| Reimbursement Amount : | $ | 223.38 |
| Previous Reimbursement Amount : | $ | 0.00 |
| Difference in Reimbursement Amount : | $ | 0.00 |
| Apportionment Amount : | $ | 0.00 |
| Less Deductible : | $ | 0.00 |
| Limited Benefits/Copay : | $ | 0.00 |
| EOR Check Amount : | $ | 178.70 |

| EXPLANATION | EXPLANATION FOR THE REVIEW AMOUNT | REF LINE NUMBER |
|---|---|---|
| 721 | Reimbursed according to the Florida fee schedule, as specified in Florida Statute 627.736 (5)(A)(2). | 1, 2, 3, 4 |
| BA | Billed Amount. | 5 |

**Comments:** THE ABOVE WAS PAID AT 80%.

WARNING: Fla. Stat. Ann. § 817.234(1)(b) (West 2009) states: "Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree."

Track your medical claims submitted to GEICO by enrolling in our online Medical Provider Claim Tracking website at: https://partners.geico.com/mpctweb.

For questions regarding payment and this EOR, please call your GEICO adjuster Daphne Manning at 863-619-4518 x4518.

**GEICO**
geico.com

EOR #: GF1406693

# EXPLANATION OF REVIEW

Florida

| | | | |
|---|---|---|---|
| Receive Date | : 04/20/2015 | Claim Number | : 0131371320101048 |
| Service Provider | : A M GERBER CHIROPRACTIC LLC | Date Of Loss | : 03/18/2015 |
| | | Patient | |
| | 700 us hwy one STE b | | |
| | North Palm Beach, FL 33408 | | |
| Case Number | : | | |
| Billing Provider | : A M GERBER CHIROPRACTIC LLC | Patient Account # | |
| | | Adjuster Name | : Daphne Manning |
| 20-2909199 | 700 us hwy one STE b | | |
| | North Palm Beach, FL 33408 | Carrier | : GEICO |
| | | | PO Box 9091 |
| Dates Of Service | : 04/10/2015 - 04/15/2015 | | Macon, GA 31208-9091 |
| Diagnostic Codes | Description | | |



| LINE | DOS | PROC CODE | MOD | DESCRIPTION | UNITS | CHARGE | REDUCTION | *PEN REDUCTION | PROVIDER REIMBURSE | EXPLANATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 04/10/15 | 98941 | AT | Chiropractic manipulative tx spinal 3-4 regions | 1.0 | $85.00 | $0.84 | $0.00 | $84.16 | 721 |
| 2 | 04/10/15 | 97010 | | Application modality 1/> areas hot/cold packs | 1.0 | $40.00 | $27.12 | $0.00 | $12.88 | 721 |
| 3 | 04/10/15 | 97012 | | Appl modality 1/> areas traction mechanical | 1.0 | $50.00 | $16.90 | $0.00 | $33.10 | 721 |
| 4 | 04/10/15 | 97014 | | Appl modality 1/> areas elec stimj unattended | 1.0 | $48.00 | $14.76 | $0.00 | $33.24 | 721 |
| 5 | 04/10/15 | 97110 | 52 | Therapeutic px 1/> areas each 15 min exercises | 1.0 | $60.00 | $0.00 | $0.00 | $60.00 | BA |
| 6 | 04/13/15 | 98941 | AT | Chiropractic manipulative tx spinal 3-4 regions | 1.0 | $85.00 | $0.84 | $0.00 | $84.16 | 721 |
| 7 | 04/13/15 | 97010 | | Application modality 1/> areas hot/cold packs | 1.0 | $40.00 | $27.12 | $0.00 | $12.88 | 721 |
| 8 | 04/13/15 | 97012 | | Appl modality 1/> areas traction mechanical | 1.0 | $50.00 | $16.90 | $0.00 | $33.10 | 721 |
| 9 | 04/13/15 | 97014 | | Appl modality 1/> areas elec stimj unattended | 1.0 | $48.00 | $14.76 | $0.00 | $33.24 | 721 |
| 10 | 04/13/15 | 97110 | 52 | Therapeutic px 1/> areas each 15 min exercises | 1.0 | $60.00 | $0.00 | $0.00 | $60.00 | BA |
| 11 | 04/15/15 | 98941 | AT | Chiropractic manipulative tx spinal 3-4 regions | 1.0 | $85.00 | $0.84 | $0.00 | $84.16 | 721 |

Track your medical claims submitted to GEICO by enrolling in our online Medical Provider Claim Tracking website at: https://partners.geico.com/mpctweb.

For questions regarding payment and this EOR, please call your GEICO adjuster Daphne Manning at 863-619-4518 x4518.

| Claim Number | : 0131371320101048 | | | Total Charges | : $84_ 00 | | EOR # GF1406693 |
|---|---|---|---|---|---|---|---|

**Billing Provider** : A M GERBER CHIROPRACTIC LLC

**Service Provider** : A M GERBER CHIROPRACTIC LLC

| Patient Name | Dates of Service : 04/10/2015 - 04/15/2015 |
|---|---|

| LINE | DOS | PROC CODE | MOD | DESCRIPTION | UNITS | CHARGE | REDUCTION | *PEN REDUCTION | PROVIDER REIMBURSE | EXPLANATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 12 | 04/15/15 | 97010 | | Application modality 1/> areas hot/cold packs | 1.0 | $40.00 | $27.12 | $0.00 | $12.88 | 721 |
| 13 | 04/15/15 | 97012 | | Appl modality 1/> areas traction mechanical | 1.0 | $50.00 | $16.90 | $0.00 | $33.10 | 721 |
| 14 | 04/15/15 | 97014 | | Appl modality 1/> areas elec stimj unattended | 1.0 | $48.00 | $14.76 | $0.00 | $33.24 | 721 |
| 15 | 04/15/15 | 97110 | 52 | Therapeutic px 1/> areas each 15 min exercises | 1.0 | $60.00 | $0.00 | $0.00 | $60.00 | BA |
| **Total Lines :** | **15** | | | | | $849.00 | $178.86 | $0.00 | $670.14 | |

| | | |
|---|---|---|
| Reimbursement Amount : | $ | 670.14 |
| Previous Reimbursement Amount : | $ | 0.00 |
| Difference in Reimbursement Amount : | $ | 0.00 |
| Apportionment Amount : | $ | 0.00 |
| Less Deductible : | $ | 0.00 |
| Limited Benefits/Copay : | $ | 0.00 |
| EOR Check Amount : | $ | 536.11 |

| EXPLANATION | EXPLANATION FOR THE REVIEW AMOUNT | REF LINE NUMBER |
|---|---|---|
| 721 | Reimbursed according to the Florida fee schedule, as specified in Florida Statute 627.736 (5)(A)(2). | 1, 11, 12, 13, 14, 2, 3, 4, 6, 7, 8, 9 |
| BA | Billed Amount. | 10, 15, 5 |

Track your medical claims submitted to GEICO by enrolling in our online Medical Provider Claim Tracking website at: https://partners.geico.com/mpctweb.

For questions regarding payment and this EOR, please call your GEICO adjuster Daphne Manning at 863-619-4518 x4518.

Claim Number:    093-0102-22B-104    Total charges  :  $849.00    EOR # GF1406693

**Billing Provider**  :  A M GERBER CHIROPRACTIC LLC

**Service Provider**  :  A M GERBER CHIROPRACTIC LLC

| Patient Name | Dates of Service   :  04/10/2015 - 04/15/2015 |
| --- | --- |

**Comments:**  THE ABOVE WAS PAID AT 80%.

WARNING: Fla. Stat. Ann. § 817.234(1)(b) (West 2009) states: "Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree."

Track your medical claims submitted to GEICO by enrolling in our online Medical Provider Claim Tracking website at: https://partners.geico.com/mpctweb.

For questions regarding payment and this EOR,  please call your GEICO adjuster Daphne Manning at 863-619-4518 x4518.

# GEICO
### geico.com

**EOR #: GF1373837**

# EXPLANATION OF REVIEW

Florida

| | | | |
|---|---|---|---|
| **Receive Date** | : 04/10/2015 | **Claim Number** | : 0131371320101048 |
| **Service Provider** | : A M GERBER CHIROPRACTIC LLC | **Date Of Loss** | : 03/18/2015 |
| | | **Patient** | |
| | 700 US HWY ONE STE B | | |
| | North Palm Beach, FL 33408 | | |
| **Case Number** | : | | |
| **Billing Provider** | : A M GERBER CHIROPRACTIC LLC | **Patient Account #** | |
| | | **Adjuster Name** | : Daphne Manning |
| 20-2909199 | 700 us hwy one STE b | | |
| | North Palm Beach, FL 33408 | **Carrier** | : GEICO |
| | | | PO Box 9091 |
| **Dates Of Service** | : 04/01/2015 - 04/06/2015 | | Macon, GA 31208-9091 |

**Diagnostic Codes**     **Description**



| LINE | DOS | PROC CODE | MOD | DESCRIPTION | UNITS | CHARGE | REDUCTION | *PEN. REDUCTION | PROVIDER REIMBURSE | EXPLANATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 04/01/15 | 99214 | 25 | Office outpatient visit 25 minutes | 1.0 | $200.00 | $0.00 | $0.00 | $200.00 | BA |
| 2 | 04/01/15 | 98941 | AT | Chiropractic manipulative tx spinal 3-4 regions | 1.0 | $85.00 | $0.84 | $0.00 | $84.16 | 721 |
| 3 | 04/01/15 | 97010 | | Application modality 1/> areas hot/cold packs | 1.0 | $40.00 | $27.12 | $0.00 | $12.88 | 721 |
| 4 | 04/01/15 | 97014 | | Appl modality 1/> areas elec stimj unattended | 1.0 | $48.00 | $14.76 | $0.00 | $33.24 | 721 |
| 5 | 04/02/15 | 98941 | AT | Chiropractic manipulative tx spinal 3-4 regions | 1.0 | $85.00 | $0.84 | $0.00 | $84.16 | 721 |
| 6 | 04/02/15 | 97010 | | Application modality 1/> areas hot/cold packs | 1.0 | $40.00 | $27.12 | $0.00 | $12.88 | 721 |
| 7 | 04/02/15 | 97014 | | Appl modality 1/> areas elec stimj unattended | 1.0 | $48.00 | $14.76 | $0.00 | $33.24 | 721 |
| 8 | 04/02/15 | 97035 | 52 | Appl modality 1/> areas ultrasound ea 15 min | 1.0 | $52.00 | $25.44 | $0.00 | $26.56 | 721 |
| 9 | 04/02/15 | 99212 | 25 | Office outpatient visit 10 minutes | 1.0 | $120.00 | $28.48 | $0.00 | $91.52 | 721 |
| 10 | 04/03/15 | 98941 | AT | Chiropractic manipulative tx spinal 3-4 regions | 1.0 | $85.00 | $0.84 | $0.00 | $84.16 | 721 |
| 11 | 04/03/15 | 97010 | | Application modality 1/> areas hot/cold packs | 1.0 | $40.00 | $27.12 | $0.00 | $12.88 | 721 |

Track your medical claims submitted to GEICO by enrolling in our online Medical Provider Claim Tracking website at: https://partners.geico.com/mpctweb.

For questions regarding payment and this EOR, please call your GEICO adjuster Daphne Manning at 863-619-4518 x4518.

| Claim Number | : | 0131371320101048 | | Total Charges | : | $1,271.00 | EOR # GF1373837 |
|---|---|---|---|---|---|---|---|

**Billing Provider** : A M GERBER CHIROPRACTIC LLC

**Service Provider** : A M GERBER CHIROPRACTIC LLC

**Patient Name**              **Dates of Service** : 04/01/2015 - 04/06/2015

| LINE | DOS | PROC CODE | MOD | DESCRIPTION | UNITS | CHARGE | REDUCTION | *PEN REDUCTION | PROVIDER REIMBURSE | EXPLANATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 12 | 04/03/15 | 97014 | | Appl modality 1/> areas elec stimj unattended | 1.0 | $48.00 | $14.76 | $0.00 | $33.24 | 721 |
| 13 | 04/03/15 | 97035 | 52 | Appl modality 1/> areas ultrasound ea 15 min | 1.0 | $52.00 | $25.44 | $0.00 | $26.56 | 721 |
| 14 | 04/06/15 | 98941 | AT | Chiropractic manipulative tx spinal 3-4 regions | 1.0 | $85.00 | $0.84 | $0.00 | $84.16 | 721 |
| 15 | 04/06/15 | 97010 | | Application modality 1/> areas hot/cold packs | 1.0 | $40.00 | $27.12 | $0.00 | $12.88 | 721 |
| 16 | 04/06/15 | 97012 | | Appl modality 1/> areas traction mechanical | 1.0 | $50.00 | $16.90 | $0.00 | $33.10 | 721 |
| 17 | 04/06/15 | 97014 | | Appl modality 1/> areas elec stimj unattended | 1.0 | $48.00 | $14.76 | $0.00 | $33.24 | 721 |
| 18 | 04/06/15 | 97110 | 52 | Therapeutic px 1/> areas each 15 min exercises | 1.0 | $60.00 | $0.00 | $0.00 | $60.00 | BA |
| 19 | 04/06/15 | 97140 | ST 59 52 | Manual therapy tqs 1/> regions each 15 minutes | 1.0 | $45.00 | $0.00 | $0.00 | $45.00 | BA |
| **Total Lines :** | **19** | | | | | $1,271.00 | $267.14 | $0.00 | $1,003.86 | |

| | | |
|---|---|---|
| Reimbursement Amount : | $ | 1003.86 |
| Previous Reimbursement Amount : | $ | 0.00 |
| Difference in Reimbursement Amount : | $ | 0.00 |
| Apportionment Amount : | $ | 0.00 |
| Less Deductible : | $ | 0.00 |
| Limited Benefits/Copay : | $ | 0.00 |
| EOR Check Amount : | $ | 803.09 |

Track your medical claims submitted to GEICO by enrolling in our online Medical Provider Claim Tracking website at: https://partners.geico.com/mpctweb.

For questions regarding payment and this EOR, please call your GEICO adjuster Daphne Manning at 863-619-4518 x4518.

| Claim Number | : 0131371320 048 | Total Charges | : $1,271.00 | EOR # GF1373837 |
|---|---|---|---|---|

**Billing Provider** : A M GERBER CHIROPRACTIC LLC

**Service Provider** : A M GERBER CHIROPRACTIC LLC

| Patient Name | Dates of Service | : 04/01/2015 - 04/06/2015 |
|---|---|---|

| EXPLANATION | EXPLANATION FOR THE REVIEW AMOUNT | REF LINE NUMBER |
|---|---|---|
| 721 | Reimbursed according to the Florida fee schedule, as specified in Florida Statute 627.736 (5)(A)(2). | 10, 11, 12, 13, 14, 15, 16, 17, 2, 3, 4, 5, 6, 7, 8, 9 |
| BA | Billed Amount. | 1, 18, 19 |

**Comments:** THE ABOVE WAS PAID AT 80%.

WARNING: Fla. Stat. Ann. § 817.234(1)(b) (West 2009) states: "Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree."

Track your medical claims submitted to GEICO by enrolling in our online Medical Provider Claim Tracking website at: https://partners.geico.com/mpctweb.

For questions regarding payment and this EOR, please call your GEICO adjuster Daphne Manning at 863-619-4518 x4518.