UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 16-cv-62610-BLOOM/Valle**

A&M GERBER CHIROPRACTIC LLC,
a/a/o Conor Carruthers, on behalf of itself
and all others similarly situated,

    Plaintiff,

v.

GEICO GENERAL INSURANCE COMPANY,

    Defendant.

_____/

**ORDER ON MOTION TO REMAND**

**THIS CAUSE** is before the Court upon a Motion to Remand filed by Plaintiff A&M Gerber Chiropractic LLC ("Plaintiff"), ECF No. [7] (the "Motion"). The Court has carefully considered the Motion, all supporting and opposing filings, the relevant authority, and is otherwise duly advised. For the reasons that follow, the Motion is denied.

**I.   BACKGROUND**

Plaintiff filed a Complaint in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, and served Defendant Geico General Insurance Company ("Defendant") on October 4, 2016. Plaintiff brings class claims for declaratory relief against Defendant, alleging that Defendant has a wide-spread practice of improperly paying claims at a reduced amount, "utiliz[ing] the Code BA with respect to payment" of any such claim. *See* ECF No. [1-2] ¶¶ 11, 21 ("Complaint"). Defendant filed a Notice of Removal on November 3, 2016, relying on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, 28 U.S.C. § 1441(a) and (b), and 28 U.S.C. § 1453, asserting that "this is a putative class action with more than 100

putative class members that are seeking to recover in excess of $5,000,000 in the aggregate, and there is minimal diversity." ECF No. [1] ¶ 8. The instant Motion to Remand, ECF No. [7], followed.

Defendant initially based its amount in controversy allegation on the affidavit of David Antonacci ("Antonacci"), attached to the Notice of Removal at Exhibit 4. *See* ECF No. [1-5]. On November 30, 2016, the Court granted Plaintiff's motion for expedited discovery to take the deposition of Antonacci, ordering that Defendant additionally provide "the data Antonacci relies upon to reach the conclusions made in his affidavit, ECF No. [1-5]." ECF No. [22] at 2. After taking Antonacci's deposition, Defendant's Response to the Motion to Remand and Plaintiff's Reply timely followed. *See* ECF Nos. [37], [40].

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *see* 28 U.S.C. § 1446. "Federal district courts, of course, have original jurisdiction over diversity cases and matters arising under federal law." *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir. 1998) (citing 28 U.S.C. §§ 1331, 1332). "[O]nce a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

The CAFA "expanded considerably the subject matter jurisdiction of the federal courts over class actions that meet certain minimal requirements." *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 911 (11th Cir. 2014) (citing *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1327 (11th Cir. 2006)). "Specifically, CAFA grants federal district courts jurisdiction over class actions where (1) any member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant, (2) the aggregate amount in controversy exceeds $5 million, and (3) the proposed plaintiff class contains at least 100 members." *Id.* (emphasis omitted) (citing 28 U.S.C. § 1332(d)(2), (5)-(6)); *see S. Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (hereinafter, "*Wellness*"). While normally a court shall "presume[ ] that a cause lies outside this limited jurisdiction," *Kokkonen*, 511 U.S. at 377, the Supreme Court has "made clear that 'no anti-removal presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.'" *Dudley*, 778 F.3d at 912 (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014)). Nevertheless, a defendant seeking removal on the basis of diversity jurisdiction must demonstrate the existence of federal jurisdiction and the amount in controversy by a preponderance of the evidence. *See* 28 U.S.C. § 1446(c)(2)(B); *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

### III. DISCUSSION

#### A. Amount in Controversy

Plaintiff does not dispute that there exists "over 100 persons in the class and that there is diversity of citizenship," but argues that Defendant has failed to sustain its burden to show that the amount in controversy exceeds $5,000,000.00. Motion at 2-3. The instant dispute, therefore,

3

is one of evidentiary sufficiency. Even in CAFA cases, "all that is required is a 'short and plain statement of the grounds for removal,' including 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold' . . . unless 'the plaintiff contests, or the court questions, the defendant's allegation.'" *Dudley*, 778 F.3d at 912 (quoting *Dart*, 135 S. Ct. at 554). "'[A] court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence,'" to determine whether the amount in controversy exceeds the jurisdictional minimum. *Id.* at 913 (quoting *Wellness*, 745 F.3d at 1315). "For CAFA purposes," a court properly "aggregate[s] the claims of individual class members and consider[s] the monetary value that would flow to the entire class if declaratory relief were granted." *Wellness*, 745 F.3d at 1316 (citations omitted). Although a removing defendant need not establish the amount in controversy with "decimal-point precision," the "requirement is not satisfied if the value of the equitable relief is 'too speculative and immeasurable.'" *Id.* at 1316, 1317 (quoting *Cohen v. Office Depot, Inc*., 204 F.3d 1069, 1077 (11th Cir. 2000)).

Defendant initially based its amount in controversy allegation on Antonacci's affidavit. *See* ECF No. [1-5]. Antonacci is a Technical Supervisor at Government Employees Insurance Company ("GEICO"), who, in his affidavit, estimates that over 1,000,000 bills include the "Explanation Code BA." *See id.* ¶¶ 1, 4. "Based on a subset of data with the Explanation Code BA," Antonacci then concludes that the average amount in controversy per bill equals $11.84, equating to a controversy of at least $11,840,000. *See id.* ¶¶ 7-8. Plaintiff challenged Antonacci's calculations, and upon Plaintiff's motion, the Court ordered that Defendant make Antonacci available for deposition. In his deposition, Antonacci testifies that he reviewed Defendant's data and records, and found that in fact, 1.9 million bills and 77,000 claims contain

the code "BA." *See* ECF No. [36-1] 20:2-4, 40:8-14 ("Antonacci Depo."). Antonacci states that for the charges in which a BA code was utilized between January 2013 and September 2016, the difference between 100% of the billed amount and 80% of the billed amount – the deduction at issue – equals approximately $23 million, well over the $5 million threshold. *See id.* at 12:13-16, 36:4-9, 39:13-22.

Plaintiff argues that Antonacci has "inflated" the amount in controversy because he did not remove "claims that were not otherwise covered under the insurance policy," and improperly utilized a "mathematical formula" instead of "the amount actually paid by GEICO." ECF No. [40] at 3. However, on a motion to remand, "'the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover.'" *Dudley*, 778 F.3d at 913 (quoting *Pretka*, 608 F.3d at 751); *see also McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) ("The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation."). The Eleventh Circuit faced a similar issue in *Wellness*, where it found an affidavit submitted by the employee of the defendant insurance company sufficient because it "identif[ied] a specific number of bills that would be affected by the declaratory relief sought, as well as a concrete monetary value that the plaintiffs may be eligible to recover if they obtain relief." *Wellness*, 745 F.3d at 1317. As in *Wellness*, Plaintiff has "not provide[d] any evidence to rebut [the] affidavit" or to meaningfully "controvert its calculations." *Id.* at 1316. And, "[g]iven the large number of medical bills at issue and the significant amount of money at stake" – in this case, potentially $23 million – even if the Court speculated that a large percentage "would be siphoned off by one contingency or another," it is unlikely that the amount in controversy would dip below the jurisdictional amount. *See id.* at 1316-17.

5

The *Wellness* Court also considered and rejected the argument, now made by Plaintiff, that the amount at issue in an action for declaratory relief against an insurance company for improper billing payments is overly speculative.  First, the *Wellness* Court made clear that a court properly considers the potential recovery of "any class member," not simply the named plaintiff.  *Id.* at 1316.  Second, and more to the point, the Eleventh Circuit reasoned that the speculation argument improperly "relies on the assumption that class members armed with a declaratory judgment would not later seek out the additional payment they are owed.  That assumption is contrary to human nature and the nature of lawyers."  *Id*.  Even if "the putative class members might have to take an extra step or two after obtaining declaratory relief to get money . . . determining that the amount in controversy exceeds $5 million is [not] too speculative of a task."  *Id.* at 1316-17.  The Court finds the analysis in *Wellness* applicable and controlling.  And, although Antonacci may not have accounted for every potential variable in the bills he identified, he states that the bills utilize the Code BA, encompassing the bills put at issue by Plaintiff covering "claims for no-fault benefits under PIP policies . . . where GEICO utilized the Code BA with respect to payment of each claim."  Complaint ¶ 21; *see* Antonacci Depo at 16:11-16, 19:13–20:13.  The Court, therefore, is not faced with the mathematical uncertainty or similar layers of "assumptions" presented in the authority relied up by Plaintiff.[1]   *See All-S. Subcontractors, Inc. v. Amerigas Propane, Inc.*, 2015 WL 4603567, at *11 (N.D. Fla. July 30, 2015); *Scenic Health All., Inc. v. State Farm Mut. Auto. Ins. Co.*, 124 F. Supp. 3d 1291, 1296 (S.D. Fla. 2015).  Accordingly, the Court finds CAFA's amount in controversy requirement satisfied in this case.

---

[1] Some of which, the Court notes, predates *Dudley* and *Dart.  See Thomas v. Bank of Am. Corp.*, 570 F.3d 1280, 1283 (11th Cir. 2009); *Miedema v. Maytag Corp.*, 450 F.3d 1322 (11th Cir. 2006).

**B.     Standing**

Plaintiff, in somewhat of an interesting twist, also argues that the Complaint does not assert an injury-in-fact sufficient to confer federal court jurisdiction. "Where the plaintiff seeks declaratory or injunctive relief, as opposed to damages for injuries already suffered . . . the injury-in-fact requirement insists that a plaintiff allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *See Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014). "[A] plaintiff seeking declaratory or injunctive relief must allege and ultimately prove a real and immediate – as opposed to a merely hypothetical or conjectural – threat of future injury." *Id.* (quotations and emphasis omitted). In regard to class actions, a plaintiff cannot simply "include class action allegations . . . and expect to be relieved of personally meeting the requirements of constitutional standing, even if the persons described in the class definition would have standing themselves to sue." *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) (internal quotations omitted). Simply put, "[t]here must be a substantial likelihood that the plaintiff will suffer future injury . . . a 'perhaps' or 'maybe' chance is not enough." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999).

On the issue of standing, the Court first returns to *Wellness. Wellness* involved a similar class-complaint in which a health-care provider brought a class action for declaratory relief against Allstate, an insurance company, for Allstate's allegedly deficient payments made pursuant to a statutory fee schedule. *See Wellness*, 745 F.3d at 1314. Like the proposed class in this case, the *Wellness* plaintiff defined the class open-ended to include "[a]ny and all health care providers and insureds who submitted claims for no-fault benefits under PIP policies which were in effect from March, 2008, where Allstate utilized the reimbursement methodology pursuant to Florida Statute 627.736(5)(a) 2(a-f) (2008) (the fee schedule) to limit reimbursement to the

provider or the insured . . . ." *Id.* at 1314.  The district court granted the plaintiff's motion to remand and the Eleventh Circuit reversed, defining the issue as "whether the [CAFA's] $5,000,000 amount-in-controversy requirement can be satisfied if the plaintiff seeks only declaratory relief.  If it can be, *there is federal jurisdiction in this case*.  If it cannot be, there is not."  *Id.* at 1313  (emphasis added).  The Eleventh Circuit found that the plaintiff had sufficiently established the $5 million threshold, and accordingly "remand[ed] for further proceedings." *Id.* at 1318.  In reversing the district court, the Eleventh Circuit *did not* question whether the plaintiff lacked standing to sue for declaratory relief in federal court for failure to plead a threat of future injury, despite the well-recognized principle that "every court has an independent duty to review standing as a basis for jurisdiction at any time, for every case it adjudicates."  *Florida Ass'n of Med. Equip. Dealers, Med-Health Care v. Apfel*, 194 F.3d 1227, 1230 (11th Cir. 1999).[2]  *Wellness* is the most factually-analogous case cited by the parties, and, as the Eleventh Circuit concluded that the district court had jurisdiction to adjudicate the action for declaratory relief, the Court finds *Wellness* instructive.

Having so concluded, the Court finds that the Complaint adequately alleges a threat of future injury such that Plaintiff has standing to bring suit in federal court.  Plaintiff alleges that Defendant "has had a general business practice of applying explanation code BA to its claims to effect payments," defining the class open-endedly to cover "any subsequent policies with substantially similar language that were in effect since January 1, 2013."  Complaint ¶¶ 21, 22. Plaintiff also pleads that Defendant currently disputes Plaintiff's "interpretation and has instead asserted that it is only required to pay 80% of the billed amount," *id.* ¶ 36, while Defendant states

---

[2] The Court recognizes that *Apfel* did "not decide what, if any, precedential value a case has when the decision reaches the merits without any discussion of standing," and accordingly, does not consider *Wellness* binding precedent on the issue.  *Apfel*, 194 F.3d at 1230.  Nevertheless, the Court considers the absence of a standing discussion in *Wellness* probative.

that "GEICO has not changed the terms of its FLPIP (01-13) policy and any policy amendment would require approval of the Florida Insurance Commissioner's office." ECF No. [37] at 13. As the Eleventh Circuit recognized in *Wellness*, claims for a declaratory judgment in such cases are not entirely abstract, as a favorable ruling "would establish that [Defendant] provided members of the putative class with insufficient payment on bills that have already been incurred, and it would give those class members a right to receive additional payment. That right to additional payment represents 'the monetary value of the benefit that would flow to the plaintiff if the declaratory relief were granted.'" *Wellness*, 745 F.3d at 1318 n.3 (alteration omitted) (quoting *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000)). Plaintiff is a "healthcare provider" allegedly representative of an open-ended class of other health-care providers involving 77,000 similar claims and approximately two million bills paid by Defendant, and Defendant apparently has no intention of changing its interpretation of the policy. Plaintiff's claimed harm is easily-repeatable and has allegedly and systematically occurred millions of times in three years. Thus, under the circumstances of this case, the Court does not find Plaintiff's chance of future injury "too remote." *See O'Shea v. Littleton*, 414 U.S. 488, 498 (1974); *Malowney*, 193 F.3d at 1347. Plaintiff, in fact, pleads that "[i]nterpretation of the Policy, the PIP statute, and its amendments are not dependent on the factual circumstances applying to Plaintiff and each Class Member," *id.* ¶ 18, undercutting Plaintiff's argument that standing depends on the Court finding that Plaintiff will have a factually "identical claim" in every respect, in the future. ECF No. [40] at 4. Considering Plaintiff's allegations in light of *Wellness*, the Court finds this action materially distinguishable from the cases Plaintiff relies upon. *See Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, 879 (11th Cir. 2016) (rejecting claims of future injury premised on the possibility that plaintiff and the class would renew their

allegedly violative insurance policy because, as a matter of law, they could not assert future injury); *Esteves v. SunTrust Banks, Inc.*, 615 F. App'x 632, 635-36 (11th Cir. 2015) (plaintiffs "allege that the defendants had committed various bad acts in the past," but do not "allege facts showing a real and immediate—as opposed to a merely hypothetical or conjectural—threat of future injury" in the "conclusory" complaint); *Thompson v. State Farm Fire & Cas. Co.*, 2015 WL 2344209, at *5 (M.D. Ga. May 14, 2015) ("Because the Plaintiffs' injury is contingent upon their townhouse suffering damage, the practical likelihood that the contingency will occur and that the controversy is a real one is decisive in determining whether an actual controversy exists" (internal quotations and alterations omitted)).  Accordingly, the Court does not find that Plaintiff lacks standing on the bases alleged, and the Motion is denied.

IV.   CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** that the Motion to Remand, **ECF No. [7]**, is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 30th day of December, 2016.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record