# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 16-cv-62610-BLOOM/Valle

A&M GERBER CHIROPRACTIC LLC,
a/a/o Conor Carruthers, on behalf of itself
and all others similarly situated,

      Plaintiff,

v.

GEICO GENERAL INSURANCE COMPANY,

      Defendant.

_____/

## <u>OMNIBUS ORDER</u>

**THIS CAUSE** is before the Court upon Plaintiff A & M Gerber Chiropractic LLC's ("Plaintiff") Motion for Partial Summary Judgment, ECF No. [59] ("Plaintiff's Motion for Summary Judgment"), Defendant GEICO General Insurance Company's ("GEICO") Motion for Summary Judgment, ECF No. [80] ("GEICO's Motion for Summary Judgment"), and GEICO's Motion to Disqualify Class Representative, ECF No. [161] ("Motion to Disqualify"), (collectively the "Motions"). The Court has carefully considered the Motions, all supporting and opposing filings, the relevant authorities, has heard oral argument by the parties, and is otherwise duly advised. For the reasons that follow, the Motion to Disqualify is denied, Plaintiff's Motion for Summary Judgment is granted, and GEICO's Motion for Summary Judgment is denied.

## I.   BACKGROUND[1]

### A.   The Policy

---

[1] While the parties may dispute the legal implications of various facts, the facts themselves are undisputed as reflected in the parties' respective responses to one another's Statements of Undisputed Facts.

This class action lawsuit seeks a declaration as to the meaning of a single sentence contained within a GEICO insurance policy as explained below. Plaintiff is a health care provider that rendered health care services to Conor Carruthers ("Carruthers") for injuries he sustained in an automobile accident in March of 2015. *See* ECF No. [59] at ¶ 11. Carruthers was insured under a policy with GEICO that provided personal injury protection ("PIP") motor vehicle insurance benefits (the "Policy"). *See* ECF No. [81] at ¶ 1. The Policy provides coverage for PIP claims pursuant to Florida Statute § 626.736. *See* ECF No. [59] at ¶ 5. The Policy also contains an endorsement to the PIP coverage identified as FLPIP (01-13) (the "FLPIP (01-13) Endorsement"), which became effective January 1, 2013. *See* ECF No. [67-1]. The FLPIP (01-13) Endorsement states, in pertinent part, as follows:

**PAYMENTS WE WILL MAKE**

The Company will pay in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), and where applicable in accordance with all fee schedules contained in the Florida Motor Vehicle No Fault Law, to or for the benefit of the injured person:

(A) Eighty percent (80%) of ***medical benefits*** which are ***medically necessary***, pursuant to the following schedule of maximum charges contained in the Florida Statutes § 627.736(5) (a)1., (a)2., and (a)3.:
. . .
6. For all other medical services, supplies, and care, 200 percent of the allowable amount under:
     (I.) The participating physicians fee schedule of Medicare Part B. . .

However, if such services, supplies, or care is not reimbursable under Medicare Part B (as provided in section (A)6. above), we will limit reimbursement to eighty percent (80%) of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes, § 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided.

. . .

> A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted.
>
> . . .

ECF No. [67-1] at 31 (emphasis in original).  The terms of the FLPIP (01-13) Endorsement quoted above have not changed since they went into effect on January 1, 2013.  *See* ECF No. [59] at ¶ 8.  The dispute in this case centers on the meaning of one sentence: "A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted." ECF No. [67-1] at 31.

In addition to the FLPIP (01-13) Endorsement, the Policy contains a document identified as M608 (01-13).  *See* ECF No. [94] at ¶ 23.  Although the parties dispute whether this document is a notice or an endorsement and whether its language has any effect on FLPIP (01-13), neither party disputes the content or authenticity of the document.  In addition, the parties are in agreement that this document was mailed to policyholders for all new policies effective on or after January 1, 2013 and all renewal policies effective on or after January 1, 2013. Moreover, the parties agree that and that it was mailed in an effort to comply with § 627.736(5)(a)5. and House Bill 119, which are further discussed below.  *See* ECF No. [81] at ¶4; ECF No. [89] at ¶ 4. The M608 (01-13) document states as follows:

<u>**IMPORTANT NOTICE**</u>
**FEE SCHEDULE ENDORSEMENT**
**USE OF MEDICAL FEE SCHEDULE FOR PERSONAL INJURY PROTECTION CLAIMS**
**THIS NOTICE IS ENCLOSED IN COMPLIANCE WITH FLORIDA STATUTE 627.736**
**Effective January 1, 2013**

> The Company will limit reimbursement of medical expenses to 80 percent of a properly billed reasonable charge, but in no event will the Company pay more than 80 percent of the following schedule of maximum charges:
>
> . . .

6. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

(I.) The participating physicians fee schedule of Medicare Part B. . .

However, if such services, supplies, or care is not reimbursable under Medicare Part B (as provided in section 6. above), we will limit reimbursement to eighty percent (80%) of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes, § 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided . . .

ECF No. [67-1] at 51.

Within the Policy, GEICO also elected the fee schedules referred to in Florida Statute § 627.736(5)(a)1.a-f. *See* ECF No. [59] at ¶ 5. As it relates to the election of fee schedules, in 2012, the Florida Legislature amended § 617.736(5)(a)5.to state the following:

Effective July 1, 2012, an insurer may limit payment as authorized by this paragraph only if the insurance policy includes a notice at the time of issuance or renewal that the insurer may limit payment pursuant to the schedule of charges specified in this paragraph. A policy form approved by the office satisfies this requirement. If a provider submits a charge for an amount less than the amount allowed under subparagraph 1., the insurer may pay the amount of the charge submitted.

Fla. Stat. § 617.736(5)(a)5. Pursuant to this new statutory requirement, the Florida Office of Insurance Regulation issued Informational Memorandum OIR-12-02M (the "Informational Memorandum"). *See* ECF No. [67-4]. The Informational Memorandum explains that its "purpose is to assist insurers with the filings necessary to implement the notice requirement in Section 627.736(5)(a)5., Florida Statutes, resulting from the passage of House Bill 119." *Id.* Among the requirements of House Bill 119 was "a new statutory requirement that insurers provide a notice of the schedule of medical charges or 'fee schedule' to insureds if the insurer is limiting reimbursement." *Id.* Along with the Informational Memorandum, the Florida Office of Insurance Regulation supplied "sample endorsement language for inclusion of the schedule of

charges specified in Section 627.736(5)(a), Florida Statutes." *Id.* However, it cautioned that "it is the insurer's responsibility to develop its own language after researching the law, reviewing its contract forms, and conferring with its legal staff." *Id.*

When GEICO submitted the FLPIP (01-13) Endorsement to the Florida Office of Insurance Regulation for its review and approval, GEICO represented that the FLPIP (01-13) Endorsement was submitted as a revision to its Automobile Casualty Forms and that three other forms consisting of A313 (10-97), CRA209 (10-97) and CC1134 (10-97) were withdrawn. *See* ECF No. [70-2] at 3. In contrast, when GEICO subsequently submitted the M608 (01-13) form to the Florida Office of Insurance Regulation in compliance with House Bill 119, GEICO did not state that this form would replace or modify the FLPIP (01-13) Endorsement. *See* ECF No. [70-3] at 3. Instead, the submission indicates that upon the approval, form M608 (04-12) would be withdrawn. *Id.*

**B.     The Disputed Charges**

Plaintiff accepted an assignment of insurance benefits under the Policy signed by Carruthers. *See* ECF No. [59] at ¶ 12. Pursuant to Carruthers's assignment of benefits, Plaintiff submitted HCFA 1500 forms to GEICO showing charges for the treatment rendered to Carruthers in the amount of $60 for CPT code 97110 and $45 for CPT Code 97140. *See* ECF No. [59] at ¶ 13. Both charges were less than the elected 2015 Medicare Part B Fee Schedule, which provides the fee for CPT Code 97110 was $33.52 and the fee for CPT Code 97140 was $30.72. *See* ECF No. [60]. At 200% of the Medicare Fee Schedule, this totals $67.04 and $61.44 respectively. *Id.*; *see* ECF No. [59] at ¶ 18. GEICO paid Plaintiff 80% of the billed amount, resulting in payments of $48 and $36 respectively. *See* ECF No. [59] at ¶ 19. The code "BA" was listed on the Explanation of Review and stands for "Billed Amount." *Id.* This code is

an explanation code generated on Explanation of Review forms after a particular claim line meeting certain criteria is processed. *See* ECF No. [94] at ¶ 15. In the case of FLPIP (01-13), for example, GEICO issues a check representing 80% of the billed amount[2] and then adds the "BA" reason code for that particular line item charge on the Explanation of Review. *Id.* In total, Plaintiff alleges that GEICO paid it $57.00 less than the Policy required. *See* ECF No. [81] at ¶ 8.

### C. The Emergency Medical Condition Clause

The FLPIP (01-13) Endorsement also limits medical benefits for a PIP claim as follows:

Medical benefits are subject to the following limitations:

(a) Reimbursement for services and care provided in paragraphs (a), (b) or (c) of the definition of medical benefits up to $10,000 if a physician licensed under Florida Statutes, chapter 458 or chapter 459, . . . has determined that the injured person had an emergency medical condition.

(b) Reimbursement for services and care provided in paragraphs (a), (b), or (c) of the definition of medical benefits is limited to $2,500 if any provider listed in paragraphs (a), (b), or (c) of the definition of medical benefits determines that the injured person did not have an emergency medical condition.

### D. The Current Posture of the Case

On June 6, 2017, this Court entered an Order granting Plaintiff's Motion for Class Certification. *See* ECF No. [65] (the "Class Certification Order"). Within it, the Court appointed Plaintiff's counsel as Class Counsel and Plaintiff as the Class Representative, and it certified the class to include the following:

All health care providers that received an assignment of benefits from a claimant and thereafter, pursuant to that assignment, submitted claims for no-fault benefits under GEICO PIP policies to which Endorsement FLPIP (01-13) applies, and any subsequent policies with substantially similar language that were in effect since

---

[2] According to GEICO, this assumes that there is no reason to deny coverage or otherwise reduce a claim line and it assumes that additional coverage has not been purchased. *See* ECF No. [94] at ¶ 15.

January 1, 2013, where GEICO utilized the Code BA with respect to the payment
of any claims.

ECF No. [65] at 22.

Pending before the Court are GEICO's Motion to Disqualify Plaintiff as a class representative and the parties' respective Motions for Summary Judgment. *See* ECF Nos. [161], [59], and [80]. The Court has reviewed the parties' responses and replies to each Motion and all accompanying filings. In addition, the Court had the benefit of extensive oral argument on the Motions for Summary Judgment.

## II.    LEGAL STANDARD

### A.    Adequacy of Class Representative

Before deciding the summary judgment issues, the Court must rule upon GEICO's challenge to Plaintiff's status as the class representative. *See* ECF No. [161]. Every class representative must satisfy the adequacy requirement of Rule 23(a)(4), which requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy-of-representation requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Busby v. JRHBW Realty, Inc.,* 513 F.3d 1314, 1323 (11th Cir. 2008) (quoting *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1189 (11th Cir. 2003)); *see also Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 314–15 (S.D. Fla. 2001) ("Rule 23(a)(4)'s adequacy requirement has two components: (1) the class representative has no interests antagonistic to the class; and (2) class counsel possesses the competence to undertake the litigation."); *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 727 (11th Cir. 1987) ("The inquiry into whether named plaintiffs will represent the potential class with sufficient vigor to satisfy the adequacy requirement of Rule

23(a)(4) most often has been described to involve questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and of whether plaintiffs have interests antagonistic to those of the rest of the class."). In the Motion to Disqualify, GEICO only challenges Plaintiff's adequacy as a class representative, not the adequacy of class counsel.

### B. Summary Judgment

The parties have filed and briefed cross-motions for summary judgment on the same legal question, asking the Court to determine the meaning of this sentence within the FLPIP (01-13) Endorsement: "[a] charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted." In addition, GEICO has raised the question of Plaintiff's standing. A district court applies the same legal standards when ruling upon cross-motions for summary judgment as it does when only one party files a motion. *See Certain Underwriters at Lloyds, London Subscribing to Policy No. SA 10092-11581 v. Waveblast Watersports, Inc.*, 80 F. Supp. 3d 1311, 1316 (S.D. Fla. 2015). "Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts." *Id.* (quoting *S. Pilot Ins. Co. v. CECS, Inc.*, 52 F. Supp. 3d 1240, 1243 ((N.D. Ga. 2014)).

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, inter alia, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th

Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The court views the facts in the light most favorable to the non moving party and draws all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, L.L.C., 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. But even where an opposing party neglects to submit any alleged material facts in controversy, a court cannot grant summary judgment unless it is satisfied that all of the evidence on the record supports the uncontroverted

material facts that the movant has proposed. *See Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## III.    DISCUSSION

### A.    Motion to Disqualify

Prior to considering the parties' respective Motions for Summary Judgment, the Court must first decide GEICO's Motion to Disqualify and determine whether Plaintiff can proceed as class representative in this action.    In support of disqualification, GEICO advances three arguments: (1) Plaintiff is not a member of the class and is, therefore, not typical of the class; (2) Plaintiff does not have a current need for a declaration in light of GEICO's overpayment of benefits and, for that reason, his claim is not typical; and (3) Plaintiff, through its corporate representative, lacks candor, honesty, and credibility, making it an inadequate class representative. *See* ECF No. [161].    The Court will address each of these arguments in turn.

#### 1.    Plaintiff's Membership in the Class

GEICO first seeks to disqualify Plaintiff because "Dr. Gerber did not utilize the assignment in submitting claims for no-fault benefits." *Id.* at 4.    To support this argument, the Motion to Disqualify sets forth a two-step process for membership in the class: (1) class members must each receive an assignment of benefits from a claimant, and (2) they must each submit that assignment to GEICO when making a claim for PIP benefits. *Id.* at 3.    GEICO does not question Plaintiff's ability to satisfy the first step.    Instead, GEICO argues that Plaintiff did not submit the assignment when making its claim for benefits, and such an omission excludes it from the class as "[i]t is a condition precedent to class membership [that] the healthcare provider utilizes the assignment in submitting claims for no-fault benefits." *Id.* at 4.    By making this

argument, GEICO adds a requirement to the class definition that was not discussed, mentioned, or contemplated by this Court's Class Certification Order.

To illustrate the point, it is important to understand the reason the Court refined the class definition. In the Class Certification Order, the Court explained that GEICO objected to "the scope of the proposed class []as overly broad because (1) it include[d] health care providers regardless of whether they ha[d] assignments from the insureds, which raise[d] a question of standing, and (2) it include[d] all health care providers that submitted claims adjusted with code BA regardless of whether their claims [we]re ultimately compensable under the Policy." ECF No. [65] at 7. Addressing GEICO's objection that Plaintiff's proposed class definition was overinclusive to the extent it included class members lacking an assignment, the Court narrowed the scope of the class as follows:

> All health care providers that received an assignment of benefits from a claimant and thereafter, pursuant to that assignment, submitted claims for no-fault benefits under GEICO PIP policies to which Endorsement FLPIP (01-13) applies, and any subsequent policies with substantially similar language that were in effect since January 1, 2013, where GEICO utilized the Code BA with respect to the payment of any claims.

*Id.* at 9. Significantly, at the class certification stage, GEICO did not argue that class members must have submitted their assignments to GEICO during the claims process. It only argued that the class could not include class members without an assignment.

Now, in support of disqualification, GEICO reads a requirement into the Class Certification Order that does not exist – that class members must have submitted the actual assignment of benefits to GEICO at the moment a claim for PIP benefits was made under the Policy. To be clear, the class definition does not contain such a requirement. The only requirement is that the class members must have received an assignment of benefits from a claimant. The words "pursuant to that assignment" within the class definition do not require that

the assignment be submitted with the claim. The language simply requires that the health care providers submit their claims *as authorized by* the assignment. The Court declines to add a requirement to the class definition that was not contemplated by the parties, much less imposed by the Court when it redefined the class.

The Court also questions the timeliness of GEICO's argument. Although GEICO could not anticipate the redefining of the class until the Class Certification Order was issued on June 6, 2017, GEICO has been aware of the new definition for five months. Throughout this time period, GEICO also knew that Plaintiff did not submit the assignment when it made the claim for benefits. Despite having this information at its disposal for months, GEICO never sought reconsideration of the Class Certification Order and instead waited to raise this issue on the heels of the scheduled trial. However, the Court need not decide the timeliness of this argument as it misinterprets the requirements of class membership. Because the class definition does not require the submission of the assignment and it is undisputed that Plaintiff had a valid assignment of benefits, the Court finds that Plaintiff is indeed a member of the class.[3]

### 2. Plaintiff's Need for a Declaration

GEICO next argues that Plaintiff is not a typical member of the class in that Plaintiff has no need for a declaration of its rights. More specifically, GEICO argues that, prior to the filing of this lawsuit, Carruthers never received an EMC determination and, as a result, the Policy limits for Carruthers's automobile accident were limited to $2,500. *See* ECF No. [161] at 5. Despite the lack of an EMC determination, GEICO paid Plaintiff $7,311.85 in benefits for

---

[3] In Response to the Motion to Disqualify, Plaintiff argues that it informed GEICO about the assignment when it submitted the HCFA 1500 forms as part of its claim for benefits. *See* ECF No. [164] at 7-8. GEICO and Plaintiff take diverging positions when explaining the significance of the HCFA 1500 form, the significance of specific boxes on the form, and whether those boxes pertain to claims for Medicare benefits as opposed to PIP benefits. *Id.*; ECF No. [167] at 3-5. Given that the individual class members are not required to submit their assignment of benefits, the Court need not dissect the HCFA 1500 forms within GEICO's claim file.

medical services provided to Carruthers and, in doing so, GEICO paid Plaintiff $4,811.85 more than it was entitled to receive. *Id.* Given that Plaintiff cannot pursue benefits above $2,500 without an EMC determination, GEICO contends this lawsuit was prematurely filed and, therefore, Plaintiff has no need for a declaration. Absent the need for a declaration, GEICO argues that Plaintiff's claim lacks the typicality of the class's claim, requiring his disqualification. The Court disagrees with GEICO's argument for several reasons.

Addressing the timeliness of this argument, GEICO was well aware of which documents were in Carruthers's claims file and what documents were not at the time it paid out the claims for benefits. GEICO has thus known that Plaintiff did not supply an EMC determination since, at least, the inception of this lawsuit – long before class certification was briefed. Yet, at the class certification stage, GEICO did not argue that Plaintiff was atypical of the class because Carruthers had no EMC determination and Plaintiff had consequently exhausted the $2,500 limit, eliminating the need for a declaration. On the question of typicality, GEICO instead generally argued that each individual PIP claim would require the application of different facts and would be subject to different coverage defenses under the policy. *See* ECF No. [57]. GEICO had the ability to raise this specific EMC challenge at the time of the class certification stage more than five months ago but did not. While the Motion to Disqualify suggests that GEICO obtained this information during the recent deposition of Dr. Gerber, at the summary judgment hearing, GEICO conceded that the EMC issue "dawned" on it when it began to "look[] closely at the file in the summary judgment stage." ECF No. [163] at 36. This concession indicates that GEICO had not looked "closely at the file" prior to summary judgment and had overlooked the EMC

issue and the alleged overpayment of benefits earlier in the case. Thus, GEICO could have raised this "typicality" challenge at the certification stage but failed to do so.[4]

Even if the Court deemed this typicality argument timely, it does not carry the day for GEICO as the EMC determination falls outside the scope of the very narrow issue to be resolved by this lawsuit. At the class certification stage, GEICO raised exhaustion of benefits generally as a concern when objecting to the ascertainability of the class.[5] *See* ECF No. [57] at 7-8 ("Moreover, 'each individual medical service provider in the class must still demonstrate that it is entitled to reimbursement for the disputed charges – i.e., the bill was properly completed pursuant to Fla. Stat. § 627.736(5)(b)(1)(d), the benefits of the insurance plan were not exhausted at the time of the procedure, . . .'"). The Class Certification Order specifically addressed GEICO's concern that a declaration in Plaintiff's favor would "relieve putative class members of their burden to prove entitlement to reimbursement for disputed charges, including proof of proper billing, *non-exhaustion of benefits under the Policy*, valid insurance coverage, and performance of the services billed." ECF No. [65] at 10. In doing so, the Court explained that, in this lawsuit, "the Court will ultimately decide nothing more and nothing less than" the very narrow question of "whether the Policy requires payment of 80% of the billed amount in all instances *or* payment of 100% of the billed amount for any charges submitted below the fee schedule amount." *Id.* The Court further reassured the parties that such a determination would be made "without prejudice to GEICO or to the putative plaintiffs to raise other arguments in other proceedings" relating to the ultimate compensability of the claims. *Id.* GEICO never

---

[4] As explained below, this "typicality" argument on the EMC determination and the alleged overpayment of benefits is also couched as a standing issue within GEICO's Motion for Summary Judgment. This belated standing argument is addressed below in section III(B)(2).

[5] GEICO's argument was related to general coverage defenses. GEICO did not raise the EMC issue at the certification stage.

sought reconsideration of the Class Certification Order. Now, the Motion to Disqualify specifically argues that Plaintiff cannot be typical of the class because he has exhausted available policy limits and does not, therefore, have a need for a declaration. *See* ECF No. [161]. As the Court already explained, while Plaintiff's alleged exhaustion of benefits may be a defense to a future claim for benefits, this specific question need not be resolved in this lawsuit.

With this background in mind, the Court must determine whether Plaintiff's claims are atypical of those belonging to the class. When considering typicality, Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]he typicality requirement is permissive: representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *In re Checking Account Overdraft,* 275 F.R.D. 666, 674 (S.D. Fla. 2011) (citing *Brown v. SCI Funeral Servs. of Fla., Inc.,* 212 F.R.D. 602, 605 (S.D. Fla. 2003)). Plaintiff, like all other members in the class, seeks an interpretation of the FLPIP (01-13) Endorsement. Consistent with the Class Certification Order, the Court once again finds that Plaintiff's claim is typical of the class's claims "[g]iven that the class-wide claim revolves around GEICO's alleged pattern and practice of reimbursing 80% even when the billed amount is less than the fee schedule." ECF No. [65] at 13.

### 3. Plaintiff's Alleged Lack of Candor, Honesty and Credibility

Finally, GEICO seeks to disqualify Plaintiff as an inadequate class representative because he has allegedly exhibited a lack of candor, honesty and credibility throughout these proceedings. *See* ECF No. [161] at 8-10. In support of this argument, GEICO recites a laundry list of items that allegedly evidence Plaintiff's dishonest conduct. *Id.* For example, GEICO states that Plaintiff fabricated evidence of his collection of co-payments from insureds, that

Plaintiff's assignment of benefits form indicates patients are not obligated to make co-payments until benefits are exhausted; that Plaintiff did not advise the Court of its failure to submit the assignment of benefits when making a claim; that Plaintiff does not maintain adequate records; that Plaintiff concocted a scheme to allow Harvey A. Frank D.C., P.A. to intervene; and that Plaintiff did not bring any documents with him to his deposition. *Id.* Before analyzing whether any of these issues warrant Plaintiff's disqualification as class representative, the Court finds that GEICO's objections are untimely. At the class certification stage, GEICO had the opportunity to challenge Plaintiff's adequacy as class representative, but failed to do so. In fact, when discussing Plaintiff's adequacy, the Class Certification Order states: "GEICO does not suggest that a conflict exists or that Plaintiff is otherwise an unsuitable class representative." ECF No. [65] at 17. GEICO removed this lawsuit to the Southern District of Florida on November 3, 2016 and then filed its Response to Plaintiff's Motion for Class Certification five months later on April 3, 2016. *See* ECF Nos. [1] and [57]. Although GEICO had five months to depose Plaintiff's corporate representative in anticipation of class certification briefing, GEICO made no attempts to do so. In fact, GEICO did not advise Plaintiff of its intent to take its corporate representative deposition until June 30, 2017 – almost three months after it responded to the Motion for Class Certification and more than three weeks after the Class Certification Order was issued. *See* ECF No. [91] at 1. Now, three weeks before trial and months after the class certification issues were briefed, GEICO seeks to challenge Plaintiff's adequacy as a class representative. The Court finds this eleventh-hour challenge untimely.

But even if the challenge were timely, none of the issues GEICO raises warrant disqualification of Plaintiff as class representative. "The adequacy-of-representation requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist

between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Busby v. JRHBW Realty, Inc.,* 513 F.3d 1314, 1323 (11th Cir. 2008) (quoting *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1189 (11th Cir. 2003)); *see also Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 314–15 (S.D. Fla. 2001) ("Rule 23(a)(4)'s adequacy requirement has two components: (1) the class representative has no interests antagonistic to the class; and (2) class counsel possesses the competence to undertake the litigation."). "[A] party's claim to representative status is defeated only if the conflict between the representative and the class is a fundamental one, going to the specific issues in controversy." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 989 (11th Cir. 2016) (quoting *Pickett v. Iowa Beef Processors,* 209 F.3d 1276, 1280 (11th Cir. 2000)). "[T]he District Court for the Southern District of Florida has previously held that when determining whether or not to certify a class, 'any inquiry concerning a [Plaintiff's] credibility is an impermissible examination of the merits of the case.'" *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484 (S.D. Fla. 2003) (citing *Powers v. GEICO,* 192 F.R.D. 313, 317 n. 6 (S.D.Fla.1998)) (finding class representative adequate even though the defendant argued he failed to disclose his involvement in another class action and he provided "demonstrably false deposition testimony."); *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 697–98 (S.D. Fla. 2015) (finding that inconsistencies in the plaintiff's testimony did not impact his ability to serve as the class representative).

The Motion to Disqualify argues that Plaintiff is not credible. For example, GEICO states that Plaintiff fabricated evidence regarding the collection of co-payments and that Plaintiff's intention was to waive co-payments and deductibles. Plaintiff has presented an affidavit and evidence that contradict GEICO's assertions. *See* ECF No. [138-2]. In order to address this alleged lack of candor for purposes of Rule 23(a) adequacy, the Court would be

required to assess Plaintiff's credibility and, in doing so, address the merits of Plaintiff's claim on a question of class certification. Rule 23, however, does not grant courts a license to engage in free-ranging merits inquiries. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013); *see also* Advisory Committee's 2003 Note on subd. (c)(1) of Fed. Rule Civ. Proc. 23 ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision.").[6] Thus, an alleged lack of credibility, standing alone, is insufficient to disqualify Plaintiff.

GEICO also raises other issues that do not render Plaintiff an inadequate class representative, such as his purported failure to inform the Court that he did not submit the assignment of benefits with the claim. As explained in section III(A)(1) above, the class definition does not contain such a requirement; therefore, Plaintiff would not have such an obligation. Other arguments are that Plaintiff does not maintain adequate medical records as required by the Florida Administrative Code, that Plaintiff concocted a scheme to have Harvey A. Frank D.C., P.A. intervene in the action, and that Plaintiff failed to produce documents at his deposition. Addressing each of these in turn, GEICO does not explain how sloppy record-keeping would disqualify a class representative nor does it cite any law supporting such a proposition. With regard to the Motion to Intervene, although Plaintiff did not prevail on this issue, its position was not frivolous so as to warrant disqualification.[7] And finally, GEICO faults Plaintiff for not producing records at the continuation of Dr. Gerber's deposition on October 31,

---

[6] Such credibility issues would be appropriately raised at trial. However, the parties have asked the Court to address the merits of the case on summary judgment, which does not allow the Court to weigh the credibility of evidence or witnesses. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (explaining that a court cannot weigh conflicting evidence on summary judgment). Because the material facts are undisputed and the issues can be resolved on summary judgment as a matter of law, the trier of fact, in this case the Court, will not have the opportunity to address questions of credibility at trial.

[7] Plaintiff argues that it did not have an opportunity to address arguments GEICO raised in its Sur-reply involving the creation of an equitable assignment. *See* ECF No. [164].

2017.  However, the Court's recent Omnibus Order informed the parties that the remaining discovery was limited to the completion of Dr. Gerber's deposition.  *See* ECF No. [155] at 11 (emphasis in original) ("Discovery is open until October 31, 2017 for *the limited purpose* of completing Dr. Gerber's deposition).  In doing so, the Court enforced its prior Order on GEICO's Motion to Compel, which did not require the production of any documents at deposition.  *See* ECF No. [113].  Despite the limited discovery allowed by the Omnibus Order, GEICO served a Notice of Taking Deposition seeking the production of documents, such as a new request for "billing records for all patients identified in ECF 138, 136 and 133."[8]  *See* ECF No. [164-2]. Given the limited scope of discovery, Plaintiff had no obligation to bring newly requested documents to the continued deposition. As such, GEICO's request to disqualify Plaintiff as a class representative is unavailing.  As the Court previously determined in its Class Certification Order, "Plaintiff's interests appear to be aligned with those of the class in that GEICO's use of the BA code to adjust claims applied across the board to Plaintiff and the putative class;" therefore, Plaintiff satisfies the adequacy test of Rule 23(a).  *See* ECF No. [65] at 17.

### B.    Cross Motions for Summary Judgment

The parties have filed Cross Motions for Summary Judgment, asking the Court to interpret the FLPIP (01-13) Endorsement in their favor.  Plaintiff's Motion asks the Court to enter "a partial summary judgment on the proper interpretation of the GEICO Policy."  ECF No. [59].  GEICO, on the other hand, argues that summary judgment is premature given the pending interlocutory appeal of the Class Certification Order.  *See* ECF No. [80].  Alternatively, GEICO

---

[8]  These specific requests could not have been in the original Notice of Taking Deposition.  Dr. Gerber's deposition commenced on August 22, 2017, but was discontinued due to a medical emergency.  *See* ECF No. [119].  The documents filed at ECF Nos. [133], [136] and [138] were not filed with the Court until early to mid-October of 2017 – weeks after the deposition initially commenced.

raises a challenge to Plaintiff's standing, seeking dismissal of the Amended Complaint due to a "lack of jurisdiction over Gerber's non-justiciable claim for declaratory relief which fails to satisfy the elements required for a declaratory action." *Id.* In the event the Court finds that Plaintiff has standing, GEICO alternatively asks the Court to grant final summary judgment in its favor on the interpretation of the FLPIP (01-13) Endorsement. *Id.* The Court addresses each of these arguments below.

### 1.    The Prematurity of Summary Judgment

Although GEICO seeks summary judgment in its own favor, it argues that Plaintiff's Motion for Summary Judgment is premature because GEICO filed a petition for interlocutory review of the Class Certification Order pursuant to Rule 23(f). *See* ECF No. [93] at 5-7. Specifically, GEICO states that if the Eleventh Circuit finds the class was improperly certified, Plaintiff can then seek certification under Rule 23(b)(3) on remand. *Id.* This is because Plaintiff's Motion for Class Certification only sought certification under Rule 23(b)(2), not Rule 23(b)(3). *See* ECF No. [53]. Based on these facts, GEICO argues that the entry of summary judgment now would violate the rule against one-way intervention if the Eleventh Circuit later reverses the Class Certification Order and then Plaintiff seeks certification under Rule 23(b)(3) on remand. *See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1252 (11th Cir. 2003) (quoting *Am. Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 547 (1974)) ("'One-way intervention' occurs when the potential members of a class action are allowed to 'await . . . final judgment on the merits in order to determine whether participation [in the class] would be favorable to their interests.'"). At the summary judgment hearing, the Court asked Class Counsel whether Plaintiff intended to seek certification under Rule 23(b)(3) should the Eleventh Circuit reverse the Class

Certification Order. *See* ECF No. [163] at 5-6. Class Counsel confirmed that Plaintiff would attempt to certify the class again under this scenario. *Id.*

Both parties assume this Court would allow Plaintiff to seek class certification under Rule 23(b)(3) in this future hypothetical situation. That is not the case. This Court has the inherent authority to manage its own docket. *Wilson v. Farley*, 203 F. App'x 239, 250 (11th Cir. 2006) (citing *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.,* 377 F.3d 1164, 1172 n. 7 (11th Cir. 2004)). At the inception of this litigation, the Court issued a Scheduling Order containing specific deadlines relating to class discovery and class certification. *See* ECF No. [21]. The time for Plaintiff to seek class certification expired many months ago on April 13, 2017. *Id.* Plaintiff could have requested certification on alternative grounds under Rule 23(b)(2) or (b)(3) or sought class certification under both as is often done in class-action litigation. *See Davis v. S. Bell Tel. & Tel. Co.*, No. 89-2839-CIV-NESBITT, 1993 WL 593999, at *7 (S.D. Fla. Dec. 23, 1993) (alteration in original) (stating that "court[s] have regularly certified an injunctive class under Rule 23(b)(2) and a damages class under Rule 23(b)(3) in the same action"). However, Plaintiff requested certification only under Rule 23(b)(2) for strategic reasons and Class Counsel confirmed this strategy decision at the summary judgment hearing. *See* ECF No. [163] at 6 ("Now, we thought about whether to move under (b)(3), and we just didn't feel it was necessary because of the issues that are involved."). Plaintiff never sought to extend the deadline for class certification or seek leave of Court to pursue certification in this bifurcated fashion. While Plaintiff may have pled two alternate grounds for class certification, Plaintiff made a tactical decision to seek certification under Rule 23(b)(2) and is precluded from later seeking to certify on different grounds if the strategy proves unsuccessful. *See Washington v. Vogel*, 158 F.R.D. 689, 692 (M.D. Fla. 1994) ("Given that Plaintiffs' counsel are experienced litigators, their

conduct in not seeking alternative certification must have been the product of a conscious tactical decision. The fact that Plaintiffs' counsel's tactical decisions did not work out as planned does not excuse the Plaintiffs' failure to timely seek class certification pursuant to Rule 23(b)(3) . . ."). Regardless of the outcome on GEICO's interlocutory appeal, the certification stage of the proceedings remains closed. Therefore, any reversal of the Class Certification Order will not result in a violation of the one-way intervention rule. As such, the Court finds that the Motions for Summary Judgment are not premature, but rather, are ripe for adjudication.

### 2. Plaintiff's Standing

As a threshold question on summary judgment, GEICO raises the issue of Plaintiff's standing. This argument is a variation of the EMC argument raised in the Motion to Disqualify. In essence, GEICO argues that Carruthers was only entitled to $2500 in medical benefits under the Policy because there was no prior EMC determination. *See* ECF No. [80]. As a result, Plaintiff, as Carruthers' assignee, was never entitled to no-fault benefits in excess of $2,500. *Id.* Because Plaintiff received payments under the Policy that far exceeded this sum, Plaintiff did not suffer any harm from GEICO's application of a 20-percent coinsurance. *Id.* GEICO thus argues that, no matter how the Court interprets the language in the Policy, Gerber will not be entitled to recover any additional benefits from GEICO, eliminating the existence of a case or controversy. *Id.*

The question of standing has been raised, considered, and ruled upon numerous times throughout the course of this litigation. At the outset of this case, Plaintiff challenged this Court's subject matter jurisdiction over its claims in the Motion for Remand. *See* ECF No. [7]. GEICO, which invoked this Court's jurisdiction, argued that "Plaintiff has alleged an ongoing injury that is substantially likely to occur in the future." ECF No. [27] at 13. Agreeing with

GEICO, this Court found that "the Complaint adequately alleges a threat of future injury such that Plaintiff has standing to bring suit in federal court." ECF No. [45] at 8. Given that "Plaintiff's claimed harm is easily-repeatable" and it "systematically occurred millions of times in three years," the Court rejected any argument that Plaintiff's chance of future injury was "too remote" and found that Plaintiff had standing. *Id.*

Standing was again addressed at the class certification stage. "[P]rior to the certification of a class, and before undertaking an analysis under Rule 23, the district court must determine that at least one named class representative has Article III standing to raise each class claim." *In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. 672, 679 (S.D. Fla. 2004) (citing *Wolf Prado–Steiman v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000)); *Griffin v. Dugger,* 823 F.2d 1476, 1482 (11th Cir. 1987). Within the Court's standing analysis in its Class Certification Order, it noted that "GEICO does not challenge Plaintiff's individual standing." ECF No. [65] at 5. The Court then independently analyzed Plaintiff's standing, finding that Plaintiff satisfied this requirement. *Id.*

Now, at the summary judgment stage, GEICO takes a contrary position by challenging Plaintiff's standing and the existence of subject-matter jurisdiction. GEICO does so even though it was GEICO that invoked this Court's subject-matter jurisdiction when removing this action from state court. *See* ECF No. [1] at 3 ("This Court Has Jurisdiction Over This Action Under CAFA.").[9] Despite these inconsistent positions, the Court has an independent obligation to

_____

[9] At the summary judgment hearing, Plaintiff faulted GEICO for not raising this EMC issue as an affirmative dense in its pleading. The Court notes that GEICO pled a standing affirmative defense on a different issue. GEICO's fourth affirmative defense states that "GERBER does not plead a claim under a third-party beneficiary theory in its amended complaint. GERBER's assignment is insufficient to afford standing." ECF No. [52] at 4-5. No mention was made of the EMC issue and the exhaustion of policy limits within GEICO's affirmative defenses. Standing, however, is not a true affirmative defense but is more akin to a denial. Further, as a court of limited jurisdiction, this Court has a duty to ensure it has subject-matter jurisdiction of the claims.

ensure it has subject matter jurisdiction, which includes standing. In its Motion for Summary Judgment, GEICO confuses the concept of standing with the concept of affirmative defenses by arguing that Plaintiff's exhaustion of benefits under the Policy deprived it of standing in this declaratory judgment action. The Court will therefore distinguish the two concepts.

"[S]tanding is a threshold jurisdictional question which must be addressed prior to and *independent of the merits of a party's claims.*" *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 974 (11th Cir. 2005) (emphasis added). "The focus of the standing inquiry is 'whether the plaintiff is the proper party to bring this suit.'" *Id.* quoting (*Raines v. Byrd,* 521 U.S. 811, 818 (1997)). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1304 (11th Cir.2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Simply put, a "threshold inquiry into standing 'in no way depends on the merits of the [petitioner's] contention that particular conduct is illegal.'" *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990). On the other hand, "an affirmative defense is generally a defense that, if established, requires judgment for the defendant even if the plaintiff can prove his case by a preponderance of the evidence." *Vasquez v. Maya Publ'g Grp., LLC*, No. 14-20791-CIV, 2015 WL 5317621, at *1 (S.D. Fla. Sept. 14, 2015) (quoting W*right v. Southland Corp.*, 187 F.3d 1287 (11th Cir.1999)). GEICO, as the defendant, bears the burden of proving any affirmative defenses while Plaintiff bears the burden of proving standing. *See Ramnarine v. CP RE Holdco 2009-1, LLC*, No. 12-61716-CIV, 2013 WL 1788503, at *4 (S.D. Fla. Apr. 26, 2013). The question here is whether GEICO's argument truly raises a question of standing as opposed to a merits inquiry that relies upon an affirmative defense. The Court finds it is the latter question.

Addressing the standing versus affirmative defense dichotomy as applied to an insurance dispute, the Eleventh Circuit found that insurance coverage arguments should not be treated as a challenge to standing. *See Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1306-07 (11th Cir. 2008). In *Mills*, the district court dismissed a class representative's property damage claims under a mobile home insurance policy due to lack of standing. *Id.* at 1301. The district court based its dismissal on its interpretation of the insurance policy and its finding that preconditions in the policy required the insureds to complete repairs to the damaged property and submit a replacement cost claim before the insureds could acquire standing. *Id.* at 1306. On appeal, the Eleventh Circuit reversed and found the district court erroneously treated the insurance coverage issue under the policy as a question of standing. *Id.* at 1307 ("Whether the Withheld Payments were covered by the Policy is an issue of whether the Millses' complaint fails to state a claim for relief under the Policy - not a standing issue."); *compare with St. Paul Mercury Ins. Co. v. Coucher*, 837 So. 2d 483, 487 (Fla. 5th DCA 2002) (stating that insurance policy exclusions or other insurance policy clauses that have the effect of "reduc[ing], limit[ing] or eliminat[ing] the recovery due with respect to a covered loss or occurrence" must be raised as an *affirmative defense*). Following *Mills*, the Court concludes that GEICO's argument does not raise a challenge to Plaintiff's standing but instead raises an exhaustion of benefits affirmative defense.

GEICO's explanation of its standing argument demonstrates that it is indeed a defense *to a claim for benefits*. In its Motion for Summary Judgment, GEICO explains that because no EMC diagnosis was provided to Carruthers, his policy limit was $2,500. *See* ECF No. [80] at 5-6. Despite this limit, GEICO paid Plaintiff $7,311. *Id.* Based on these facts, GEICO concludes "regardless of how this Court answers the policy interpretation questions posed in Gerber's complaint, *Gerber will not be entitled to recover any additional benefits from GEICO*." *Id.* at 6

(emphasis added). This case is not about the recovery of insurance benefits. This case is about the proper interpretation of the FLPIP (01-13) Endorsement. Should Plaintiff's interpretation be the prevailing one, *then* the class members presumably could use such an interpretation to pursue additional benefits under the Policy in a completely separate proceeding. Under that circumstance, GEICO would be free to raise any defenses available under the Policy, such as the exhaustion of benefits defense raised here. However, this defense cannot be used to challenge whether Plaintiff has standing in this declaratory judgment action. This Court has repeatedly found that Plaintiff has standing and finds no basis to conclude otherwise now.

### 3. The FLPIP (01-13) Endorsement

The interpretation of the FLPIP (01-13) Endorsement is at the heart of the Cross Motions for Summary Judgment. Specifically, the Court must determine the meaning of this one sentence: "A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted." Plaintiff argues this sentence means that "when a healthcare provider bills for covered services at an amount less than 200% of the fee schedule – either Medicare or Workers Comp (depending on the CPT code) – Defendant is required to pay the charge as billed without reduction attributable to 80% of the amount charged." ECF No. [59] at 7. GEICO, in turn, argues that the Policy "unambiguously states that the 20% coinsurance applies to all charges." ECF No. [80] at 7. For the reasons explained below, the Court agrees with Plaintiff's interpretation of the Policy.

### a) Construction of an Insurance Policy

"Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy." *Pac. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co.*, No. 3:05-cv-850-J-32TEM, 2007 WL 2900452, at *4 (M.D. Fla.

Oct. 2, 2007) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002)). As with all contracts, the interpretation of an insurance contract – including determining whether an insurance provision is ambiguous – is a question of law to be determined by the court. *Id.*; *Travelers Indem. Co. of Illinois v. Hutson*, 847 So. 2d 1113 (Fla. 1st DCA 2003) (stating that whether an ambiguity exists in a contract is a matter of law). Further, "[u]nder Florida law, insurance contracts are construed according to their plain meaning." *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)). The "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties-not a strained, forced or unrealistic construction." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002)(quoting *Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.*, 260 So. 2d 249 (Fla. 4th DCA 1972); *see also Gilmore v. St. Paul Fire & Marine Ins.*, 708 So. 2d 679, 680 (Fla. 1st DCA 1998) ("The language of a policy should be read in common with other policy provisions to accomplish the intent of the parties."). "Terms and phrases cannot be viewed in isolation; 'courts must construe an insurance contract in its entirety, striving to give every provision meaning and effect.'" *Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1221 (11th Cir. 2015) (quoting *Dahl–Eimers v. Mut. of Omaha Life Ins. Co.,* 986 F.2d 1379, 1382 (11th Cir. 1993). With that said, if there is more than one reasonable interpretation of an insurance policy, an ambiguity exists and it "should be construed against the insurer." *Pac. Emp'rs Ins.*, 2007 WL 2900452, at *4 (citing *Purelli v. State Farm Fire & Cas. Co.,* 698 So. 2d 618, 620 (Fla. 2d DCA 1997)).

**b)** **The M608 (01-13) Document**

Before the Court can interpret the Policy, it must first determine the universe of documents that form part of the Policy. Florida law requires that "[e]very insurance contract . . . be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto." Fla. Stat. § 627.419(1). The parties are in agreement that the FLPIP (01-13) Endorsement is indeed an endorsement to the Policy. However, they disagree about whether the M608 (01-13) document is an endorsement or a notice and about the effect, if any, it has on the Policy.

GEICO argues the M608 (01-13) document is an endorsement based on three facts (1) the document was attached to the Policy, (2) the document contains the words "Fee Schedule Endorsement," and (3) the "Office of Insurance Regulation (OIR) required it to be an 'endorsement' and to have the effect of 'policy language.'" *See* ECF No. [109] at 6-8. GEICO relies upon *Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Lumbermens Mut. Cas. Co.*, 385 F.3d 47 (1st Cir. 2004) and other similar cases to argue that an endorsement attached to a policy forms part of the contract and because the M608 (01-13) document was attached to the Policy, it qualifies as an endorsement. However, GEICO's analysis skips a step in that it presupposes that the M608 (01-13) document is an endorsement simply because it was delivered with the Policy. Before the Court can consider the effect of the M608 (01-13) document, it must first determine whether this document constitutes an endorsement.

Florida law requires that "every policy" specify certain information including "the form numbers and edition dates or numeric code indicating edition dates, when such code has been supplied to the office, of **all endorsements attached to a policy**." Fla. Stat. § 627.413(1)(g)

(emphasis added).[10] GEICO does not direct the Court to any language within the Policy that refers to the M608 (01-13) document, much less any language within the Policy that refers to it as an endorsement. In contrast, the Policy, through its Declarations Page, makes reference to many other endorsements attached to the Policy as required by § 627.413(1)(g). Specifically, the Declarations Page states on the first page: "This is a description of your coverage." *See* ECF No. [67-1] at 5. Thereafter, GEICO identifies all contracts, amendments, and endorsements to the Policy by form number and edition dates in conformity with § 627.413(1)(g). For example, the "Contract Type" is listed as "A30FL, FAMILY AUTO INSURANCE POLICY," while the "Contract Amendments" are listed as "ALL VEHICLES – A30FL (03-11) A54FL (02-13) FLPIP (01-13)," and the "Unit Endorsements" are listed as "A-115 (04-08) (VEH 1,2,3); A239 (02-13) (VEH 1,2,3); A431 (05-11) (VEH 1,2,3); UE316F (07-11) (VEH 1)." *Id.* at 6. Noticeably absent from the "description of [Carruthers's] coverage" on the Declarations Page is any reference to M608 (01-13). *Id.* This form is neither listed as a "Contract Type," a "Contract Amendment," or a "Unit Endorsement." *Id.* The omission of M608 (01-13) from the Declarations Page does not appear to be accidental as Florida law requires that the Policy list all endorsements.[11]

---

[10] GEICO argues that this provision does not apply to the Policy because it "only 'applies to life insurance policies and health insurance policies only at the time of original issue.'" ECF No. [109] at 8. Not so. This subsection states: "This requirement applies to life insurance policies and health insurance policies only at the time of original issue." Fla. Stat. § 627.413 (1)(g). Contrary to GEICO's argument, this statute states that it applies to "every policy" but, in the case of life insurance and health insurance policies, this provision *only* applies at the time of original issuance. *Id.* Had the Florida Legislature intended to limit the application of this provision to health insurance and life insurance policies, it would have stated so. Instead, the statute contains no such limitation as to other forms of insurance, such as automobile insurance. In fact, "Part II of chapter 627 contains general provisions *governing all insurance contracts subject to regulation by the insurance code*." *Hepler v. Atlas Mut. Ins. Co.*, 501 So. 2d 681, 684 (Fla. 1st DCA 1987) (emphasis added).

[11] This conclusion is not intended to suggest that § 627.413(1)(g) requires endorsements to be listed in a policy's *declarations page*. The statute simply requires that "every policy" specify this information.

The definition of the word "endorsement" also sheds light on whether M608 (01-13) is a notice or an endorsement. An endorsement "is a writing added or attached to a policy or certificate of insurance *which expands or restricts its benefits or excludes certain conditions from coverage*." 2 Couch on Ins. § 18:19 (emphasis added). The M608 (01-13) document does not purport to expand or restrict Carruthers's benefits or otherwise exclude certain conditions from coverage. This is evidenced by the fact that it is devoid of any language amending or otherwise modifying the Policy. When compared to the other amendments/endorsements attached to the Policy, it becomes clear that GEICO did not intend to make the M608 (01-13) document an endorsement. For example, the FLPIP (01-13) Endorsement, which is signed by two GEICO executives, expressly amends the Policy in the first line by stating: "*[y]our* policy is amended as follows." ECF No. [67-1] at 29 and 39 (emphasis in original). Similarly, the A54FL (02-13) "Florida Policy Amendment" and the A-115 (04-08) "Automobile Policy Amendment" state: "*Your* policy is amended as follows." *Id.* at 29 and 41 (emphasis in original). Both of these amendments are signed by GEICO executives. *Id.* Similarly, the A239 (02-13) "Uninsured Motorists Coverage" form states "Section IV of *your* policy is replaced by the following" while the A-431 (05-11) "Automobile Policy Endorsement" states "[w]e agree with *you* that the policy is amended as follows" and both are signed by GEICO executives. *Id.* at 43 and 47 (emphasis in original). As to the UE-316F "Endorsement Loss Payable Clause," it is not signed by anyone, but states "[t]his endorsement forms a part of *your* policy." *Id.* at 49 (emphasis in original). By way of comparison, the M608 (01-13) document does not contain any language such as "your policy is amended as follows" or "this endorsement forms a part of your policy." *Id.* at 51-52. Similarly, it is not signed by any GEICO executives. *Id.* In sum, nowhere

Here, GEICO does not direct the Court to any language within the Policy or the Declarations Page that lists M608 (01-13) as an endorsement.

in the Policy, the Declarations Page, or the M608 (01-13) document is there any language suggesting it forms part of the Policy. In order for a paper attached to a policy to demonstrate it is related to the policy, "sufficient reference [should] be made in *either* the policy or the endorsement to identify the papers as related." *See Metro. Life Ins. Co. v. Glisson*, 295 F.3d 1192, 1194 (11th Cir. 2002) (emphasis in original) (finding that the endorsement formed part of the policy because it "specifically referenced the policy to which it was attached."). In this case, such a link between M608 (01-13) and the Policy is lacking.

Not only does M608 (01-13) fail to identify itself as a document that amends the Policy, but the language within it also suggests it was not intended as an amendment. The last two sentences of M608 (01-13) state: "Personal Injury Protection Coverage is subject to the terms, conditions and exclusions in your policy. Please read your policy carefully." *Id.* at 52. These two sentences refer Carruthers, as the insured, to his Policy for an understanding of its terms, conditions, and exclusions. Significantly, they do not direct the insured to the language in M608 (01-13) for such an understanding and M608 (01-13) does not identify itself as part of the Policy. Thus, by referring the insured to the Policy language, M608 (01-13) suggests its own language is not part of the Policy.

To support its position that M608 (01-13) is an endorsement, GEICO also relies upon language within the Informational Memorandum prepared by the Florida Office of Insurance Regulation ("OIR") and argues that the OIR "required [M608 (01-13)] to be an 'endorsement' and to have the effect of 'policy language'" in order to comply with House Bill 119. ECF No. [109] at 6. However, the Court's review of the Informational Memorandum does not reveal such a mandate. Starting at the top of the document, the Informational Memorandum explains that its purpose is "to assist insurers with the **filings**

necessary to implement the **notice** requirement in Section 627.736(5)(a)5., Florida Statutes, resulting from the passage of House Bill 119. Among the various provisions of this legislation is a new statutory requirement that insurers provide a **notice** of the schedule of medical charges or 'fee schedule' to insureds if the insurer is limiting reimbursement." ECF No. [67-4]. Thereafter, the memorandum informs insurers in permissive terms that they "*may* file and propose policy language as an alternative" to the sample language. *Id.* (emphasis added). Although it also states that the OIR will commit to review filings submitted for this purpose on an expedited basis provided that the insurer has submitted only one endorsement, there is no language mandating that the proposed filing take the form of an endorsement. *Id.* When this language is read in the context of the whole memorandum, it is evident that the OIR was not mandating that the filing take a specific form. For example, the memorandum informs insurers that "[d]epending upon the **existing policy language**, the sample language may be suitable to address the notice requirement of House Bill 119 **or the insurer may already have approved language that satisfies the notice requirement**." *Id.* (emphasis added). It further reminds insurers that it is each insurer's "responsibility to develop its own language after researching the law, reviewing its contract forms, and conferring with its legal staff." *Id.* Thus, the Informational Memorandum gave insurers the discretion to satisfy the statutory notice requirement as they each saw fit.

A reading of the Policy as a whole leads the Court to conclude that M608 (01-13) cannot be an endorsement. When GEICO intended documents to be an endorsement or amendment to the Policy, it listed them in the Declarations Page and it included language within the endorsement/amendment clearly referencing the Policy and informing the insured of the effect such a document had on the Policy. In addition, with the exception of the UE-316F form, all

amendments and endorsements listed on the Declarations Page were signed by GEICO executives. GEICO did not employ any of these techniques when drafting M608 (01-13). The stark contrast between M608 (01-13) and all other endorsements/amendments attached to the Policy leads this Court to find that M608 (01-13) is simply a notice of GEICO's election to adopt the Medicare fee schedules in compliance with House Bill 119 and Florida Statute § 627.736(5).[12] At best, the dichotomy between the title - "Important Notice Fee Schedule Endorsement" - and the failure to identify M608 (01-13) as part of the Policy renders its purpose ambiguous. "If there is more than one reasonable interpretation of an insurance policy, an ambiguity exists and it 'should be construed against the insurer.'" *Pac. Emp'rs Ins.*, 2007 WL 2900452, at *4. Even under this best-case scenario, such an ambiguity must be construed in favor of the insured or, in this case, in favor of Plaintiff as the assignee.

### c) Textual Interpretation

The only question left to be resolved on summary judgment is the meaning of one sentence within the FLPIP (01-13) Endorsement: "A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted." ECF No. [67-1] at 31 ("the disputed provision"). As mentioned above, Plaintiff interprets this to mean that, if a healthcare provider submits a bill less than the applicable fee schedule, then GEICO must pay the entire amount billed without the application of a 20-percent coinsurance. GEICO interprets this sentence to include such a coinsurance regardless of the amount billed.

---

[12] By reaching this conclusion, the Court is not declaring the M608 (01-13) notice invalid or void. It is simply finding that this document constitutes a notice of GEICO's election of the fee schedule in compliance with House Bill 119 and § 627.736(5)(a)5. rather than an endorsement.

To analyze the issue, the Court cannot read this sentence in isolation but must instead consider the pertinent section of the FLPIP (01-13) Endorsement where this sentence is located. It states:

**PAYMENTS WE WILL MAKE**

The Company will pay in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), and where applicable in accordance with all fee schedules contained in the Florida Motor Vehicle No Fault Law, to or for the benefit of the injured person:

(A) Eighty percent (80%) of ***medical benefits*** which are ***medically necessary***, pursuant to the following schedule of maximum charges contained in the Florida Statutes § 627.736(5) (a)1., (a)2., and (a)3.:
. . .
6. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

   (I.) The participating physicians fee schedule of Medicare Part B. . .

However, if such services, supplies, or care is not reimbursable under Medicare Part B (as provided in section (A)6. above), we will limit reimbursement to eighty percent (80%) of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes, § 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided.

. . .

A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted.

. . .

ECF No. [67-1] at 31 (emphasis in original).

To support its interpretation, Plaintiff argues that the phrase "an amount less than the *amount allowed* above" refers to "200 percent of the *allowable amount* under the participating

physicians fee schedule of Medicare Part B." ECF No. [59] at 9-10 (emphasis added). According to Plaintiff, the phrase "amount less than the amount allowed above" echoes GEICO's reference to the "allowable amount" language in section (A)6. *Id.* In response, GEICO argues that "[t]he disputed provision of GEICO's policy simply notifies providers that charges not exceeding the fee schedule 'shall be paid' in the amount of the charge submitted," but "[i]t does not address how much 'shall be paid' by GEICO and how much 'shall be paid' by the insured." ECF No. [93] at 14. To answer this question, GEICO asks the Court to refer to the coinsurance provision of § 627.736(5)(a), which provides:

> The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:
>
> . . .
>
>> f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:
>>
>>> (I) The participating fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).
>
> . . .
>
> 5. An insurer may limit payment as authorized by this paragraph only if the insurance policy includes a notice at the time of issuance or renewal that the insurer may limit payment pursuant to the schedule of charges specified in this paragraph. A policy form approved by the office satisfies this requirement. **If a provider submits a charge for an amount less than the amount allowed under subparagraph 1., the insurer may pay the amount of the charge submitted.**

Fla. Stat. § 627.736(5)(a) (emphasis added). Relying upon the language in this statute, especially the bolded language, GEICO argues that these "clearly show that all reimbursements are subject to a 20% copayment." ECF No. [93] at 14.

While GEICO asks the Court to consider the language of the statute when interpreting the disputed provision, the Court is mindful that the interpretation of an insurance policy, such as the

one at issue, is subject to principles of contract interpretation. GEICO argues that the FLPIP (01-13) Endorsement "essentially reproduces, incorporates, and adopts the nearly identical language of section 627.736(5)(a)" and that an interpretation of the endorsement is an interpretation of the statute that "would apply to all Florida PIP insurers." ECF No. [93] at 11. However, there are pertinent differences between the language of the statute and the language of the FLPIP (01-13) Endorsement that cannot be ignored. The mere incorporation of the Florida Motor Vehicle No Fault Law into the endorsement does not allow the Court to ignore the language of the Policy and replace it with the language of the statute. *See Kingsway Amigo Ins. Co. v. Ocean Health, Inc.*, 63 So. 3d 63, 67 (Fla. 4th DCA 2011) ("We reject Kingsway's argument that, because the PIP statute is incorporated into the policy, it had the unilateral right to ignore the only payment methodology referenced in the policy."). The two are not interchangeable. And, an insurer is certainly free to provide greater insurance coverage than the minimum floor required by the statute. *Id.* (quoting *State Farm Florida Ins. Co. v. Nichols*, 21 So. 3d 904 (Fla. 5th DCA 2009)) ("An insurance company is not precluded from offering greater coverage than that required by statute."); *Wright v. Auto–Owners Ins. Co.,* 739 So. 2d 180, 181 (Fla. 2d DCA 1999) ("Auto-Owners contends that the opening reference to the 'No-Fault Law' should be read to limit the coverage the policy provides to the minimum coverage the law mandates. We reject such a reading.").

Comparing the disputed language in the FLPIP (01-13) Endorsement to the language in § 627.736(5)(a)5., upon which GEICO relies, there are several important differences. The endorsement provides: "A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted." ECF No. [67-1] at 31. On the other hand, the statute states: "If a provider submits a charge for an amount less than the

amount allowed under subparagraph 1., the insurer may pay the amount of the charge submitted." Fla. Stat. § 627.736(5)(a)5. The former is mandatory while the latter is permissive. The statute applies to charges that are less than the amount allowed "under subparagraph 1.," which limits reimbursement to 80% of the schedule of maximum charges. *Id.* The disputed provision, however, applies when the billed amount is less than the "amount allowed above" – without reference to a specific paragraph. *See* ECF No. [67-1]. The statute specifies who will pay the amount of the charge submitted – the insurer. Fla. Stat. § 627.736(5)(a)5. The disputed provision does not identify who will pay – a critical distinction given that Plaintiff identifies GEICO as the payor while GEICO argues that it, along with the insured, are payors under the automatic application of a 20-percent coinsurance. Thus, the statute and the Policy are not "for all intents and purposes" the same as GEICO argues.

Given the differences between the disputed provision and the statute, the Court will focus its analysis on the language of the FLPIP (01-13) Endorsement to ascertain its meaning. GEICO asks the Court to consider the significance of the paragraph alignment in the endorsement to the extent that the disputed provision is indented and aligned with the paragraphs electing the fee schedule. *See* ECF No. [80] at 11. Pursuant to the Scope-of-Subparts Canon, which means that "[m]aterial within an indented subpart relates only to that subpart; material in unindented text relates to all the following or preceding indented subparts,"[13] GEICO argues that the disputed provision is a subpart of paragraph (A). *Id.* Paragraph (A) states GEICO will pay "[e]ighty percent (80%) of medical benefits which are medically necessary, pursuant to the following schedule of maximum charges contained in the Florida Statutes § 627.736(5)(a)1., (a)2., and (a)3." ECF No. [67-1] at 31. Thus, applying this canon, GEICO asks the Court to find that the

---

[13] *Melchert v. Pro Elec. Contractors*, 892 N.W.2d 710, 733 (Wis. 2017) (quoting Scalia & Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS at 156-60, 221 (2012)).

disputed provision refers back to the 80 percent reimbursement rate in paragraph (A) and thus contains a 20-percent coinsurance. *See* ECF No. [80] at 11. According to GEICO, if it wanted the disputed provision to modify the preceding paragraphs as Plaintiff argues, it would not be indented. *Id.* at 12.

Plaintiff counters this rationale by pointing out that canons cannot exist in a vacuum, especially when such an application "trump[s] the context and wording of the provision interpreted." *See* ECF No. [88] at 18. The Court agrees. "No canon of interpretation is absolute. Each may be overcome by the strength of differing principles that point in other directions." *See* Scalia & Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS at 59. For example, the Eleventh Circuit has rejected the Scope-of-Subparts Canon when its application did not make sense. *See Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1105–06 (11th Cir. 2015). Plaintiff asks the Court to apply the Supremacy of Text Canon, which means "[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." *Id.* at 56.

With these principles in mind, the Court will review the endorsement as a whole to interpret it. The section at issue commences with the title – "PAYMENTS **WE** WILL MAKE." ECF No. [67-1] at 31 (emphasis added, caps in original). Thereafter, section (A) states GEICO will pay 80% of medical benefits "pursuant to the following schedule of maximum charges" and it details such charges. *Id.* Pertinent to this discussion, subsection 6 states: "For all other medical services, supplies, and care, 200 percent of the allowable amount under: (I.) The participating physicians fee schedule of Medicare Part B. . ." *Id.* Following this schedule of maximum charges, the endorsement sets forth a series of separate paragraphs, the first of which begins with the word "However," that specify what and how GEICO will pay. *Id.* Included in

this series of qualifications is the disputed provision. This part of the endorsement states as follows:

> However, if such services, supplies, or care is not reimbursable under Medicare Part B (as provided in section (A)6. above), we will limit reimbursement to eighty percent (80%) of the maximum reimbursable allowance under workers' compensation, as determined under Florida Statutes, § 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by us.
>
> . . .
>
> A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted.
>
> . . .

*Id.* (emphasis added).

The critical question is whether the phrase "an amount less than the *amount allowed above*" in the disputed provision refers to "200 percent of the allowable amount under the participating physicians fee schedule of Medicare Part B" or to the 80 percent reimbursement rate in section (A). ECF No. [67-1] at 31. Far from a model of clarity, the Court concludes that the disputed provision is ambiguous. The use of the indented paragraphs, as GEICO argues, can lead to a reasonable interpretation that the disputed provision is modified by the language of section (A) and is therefore only reimbursed at a rate of 80 percent. At the same time, the use of the word "above" in the paragraph that begins with "However" directly refers to subsection (A)6. A consistent application of the word "above" in the disputed paragraph can reasonably lead to an interpretation that it also refers to subsection (A)6 and not section (A). In addition, GEICO chose to explicitly limit reimbursement in the paragraph beginning with "However" to "80% of the maximum reimbursable allowance under workers' compensation" for charges not

reimbursable under Medicare Part B while it also chose not to include such limiting language in the disputed provision. This can also lead to a reasonable interpretation that the disputed provision is not limited to an 80 percent reimbursement rate; otherwise, GEICO would have explicitly stated so. This argument is even more compelling when one considers the Scope-of-Subparts Canon and the fact that both paragraphs are indented. If all indented paragraphs relate to section (A) and its 80 percent reimbursement rate, it begs the question as to why GEICO specified an 80 percent reimbursement rate in the first indented paragraph and not in the disputed paragraph.

If there is more than one reasonable interpretation of an insurance policy, an ambiguity exists and it "should be construed against the insurer." *Pac. Emp'rs Ins.*, 2007 WL 2900452, at *4. Here, the Court finds the disputed provision is ambiguous and it must, therefore, construe the provision against GEICO and in favor of Plaintiff. As such, the Court holds that, under the disputed provision, when a health care provider bills for covered services in an amount less than 200% of the fee schedule, GEICO is required to pay the charge as billed without any reduction.

## IV. CONCLUSION

For all of the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1. GEICO's Motion to Disqualify Class Representative, **ECF No. [161]**, is **DENIED**.

2. Plaintiff's Motion for Partial Summary Judgment, **ECF No. [59]**, is **GRANTED**. The disputed provision within the FLPIP (01-13) Endorsement that states "[a] charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted" is interpreted as follows: if a provider submits a bill to GEICO that is less than 200 percent of the applicable fee schedule, GEICO shall pay the provider 100 percent of the amount billed. This interpretation of the FLPIP (01-13) Endorsement does not alleviate class

members from satisfying their individual burden to prove entitlement to benefits. Similarly, this interpretation of the FLPIP (01-13) Endorsement does not address the availability of any defenses that GEICO may raise in response to any claims for benefits made by members of the class.

3. GEICO's Motion for Summary Judgment, **ECF No. [80]**, is **DENIED**.

4. The Court will enter final judgment in favor of Plaintiff by separate order.

5. All pending motions are **DENIED** as **MOOT** and all deadlines are **TERMINATED**.

6. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 17th day of November, 2017.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record